## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ITC^DELTACOM COMMUNICATIONS, INC. <br> 7037 Old Madison Pike Road, Suite 400 <br> Huntsville, AL 35806, <br><br> BUSINESS TELECOM, INC. <br> 7037 Old Madison Pike Road, Suite 400 <br> Huntsville, AL 35806, AND <br><br> BUSINESS TELECOM OF VIRGINIA, INC. <br> 7037 Old Madison Pike Road, Suite 400 <br> Huntsville, AL 35806 <br><br> Plaintiffs, <br><br> v. <br><br> AT&T CORP. <br> 1 AT&T Way <br> Bedminster, New Jersey 07921, <br><br> AT&T COMMUNICATIONS, INC. <br> 1 AT&T Way <br> Bedminster, New Jersey 07921, AND <br><br> DOES 1-20, <br><br> Defendants. | CASE NO.: 1:05CV01360 <br><br> JUDGE: Ellen Segal Huvelle <br><br> JURY TRIAL REQUESTED |

## ANSWER AND COUNTERCLAIMS

Defendants AT&T Corp and AT&T Communications, Inc. (collectively "AT&T"), by and through their attorneys, herein respond to the Complaint filed by Plaintiffs ITC^DeltaCom Communications, Inc. ("ITCD"), Business Telecom, Inc. and Business Telecom of Virginia, Inc. (together, "BTI") (collectively, "Plaintiffs").

As a preliminary matter, AT&T notes that Plaintiffs ground their claims in this action in part upon the determinations made by the Federal Communications Commission ("FCC") and set forth in an Order released on February 23, 2005 in WC Docket No. 03-133 ("Prepaid Calling Card Order"). The FCC issued the Prepaid Calling Card Order in response to a petition AT&T filed seeking a declaratory ruling regarding regulation of its enhanced pre-paid calling card service ("enhanced pre-paid service"). AT&T has appealed the FCC's determinations in the Prepaid Calling Card Order to the United States Court of Appeals for the District of Columbia Circuit. AT&T maintains that, even if the Prepaid Calling Card Order is upheld on appeal, AT&T has no liability to Plaintiffs under any of the claims asserted in the Complaint. However, a ruling from the appeals court in AT&T's favor could foreclose the basis for, and thus warrant the dismissal of, Plaintiffs' claims to the extent they are based on the Prepaid Calling Card Order. Accordingly, AT&T asserts a global denial of the findings in the FCC's Prepaid Calling Card Order.

Any allegation not expressly admitted is denied. AT&T states as follows:

## NATURE OF THE ACTION

1.      This case involves AT&T's failure to pay legally required charges for its use of Plaintiffs' local network facilities to receive and complete long-distance calls. Whenever one of AT&T's long-distance customers makes a long-distance call to one of Plaintiffs' local telephone customers, AT&T uses the Plaintiffs' local facilities to complete, or "terminate," the AT&T long-distance call. Similarly, whenever one of AT&T's long-distance customers uses a local telephone line provided by Plaintiffs to place a long-distance call, AT&T uses the Plaintiffs' local facilities to "originate" the long-distance call. Pursuant to contracts and Plaintiffs' federal and state tariffs on file with the Federal Communications Commission ("FCC") and state regulatory bodies, AT&T is required to pay Plaintiffs for this "originating" and "terminating" "access" to Plaintiffs' local exchange facilities.

**ANSWER NO. 1:**     AT&T admits that Plaintiffs seek in this case to recover charges from AT&T, but AT&T denies the remaining allegations in the first sentence of paragraph 1. AT&T admits that, for many long distance calls, AT&T uses local facilities of local exchange

carriers, like Plaintiffs', to terminate and/or originate such calls, but AT&T denies the remaining allegations in the second and third sentences of paragraph 2. AT&T admits that tariffs filed with the FCC and state regulatory commissions typically state the terms and conditions on which local exchange companies like Plaintiffs offer services, but AT&T denies the remaining allegations in the last sentence of paragraph 1.

2.      Beginning in or around 2000 and continuing through the present, AT&T orchestrated and implemented at least two fraudulent schemes in an attempt to avoid Plaintiffs' "access charges" (along with access charges of numerous other carriers), as described herein.

**ANSWER NO. 2:**      Denied.

3.      The FCC has twice rejected AT&T's supposed bases for failing to pay access charges to local carriers such as Plaintiffs, in orders released in April 2004 and February 2005.[1] Rather than award damages, however, the FCC instructed carriers damaged by AT&T's violation of access charge requirements to seek recovery in court.

**ANSWER NO. 3:**      AT&T admits that the FCC released two orders in April 2004 and February 2005 that relate to AT&T's phone-to-phone Internet Protocol ("IP") telephone service and to AT&T's enhanced prepaid calling card services, but avers that the FCC's orders speak for themselves. AT&T denies the remaining allegations in paragraph 3.

4.      Particularly in light of these FCC decisions, AT&T has no excuse for its failure to pay lawfully tariffed access charges. Accordingly, Plaintiffs seek to recover the access charges that AT&T has unlawfully failed to pay and to enjoin AT&T from continuing its unlawful conduct.

**ANSWER NO. 4:**      AT&T admits that Plaintiffs allege in this suit that they have suffered damages related to nonpayment of access charges. AT&T denies the remaining allegations in paragraph 4.

---

[1]      *See Petition for a Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges*, WC Docket No. 02-361, Order, FCC 04-97 (Apr. 21, 2004) (*"FCC Access Charge Order"*), *and AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services,* WC Docket Nos. 03-313 and 05-68, Order and Notice of Proposed Rulemaking, FCC 05-41 (Feb. 23, 2005) (*"FCC AT&T Calling Card Access Charges Order"*).

## JURISDICTION AND VENUE

5.    This is, in significant part, a collection action for payments arising under section 203 of the Communications Act of 1934, 47 U.S.C. § 203, and Plaintiffs' interstate access tariffs filed thereunder. This Court accordingly has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and 47 U.S.C. § 207. In addition, since AT&T is a common carrier, Plaintiffs' claims also arise under section 206 of the Communications Act of 1934, 47 U.S.C. § 206. This Court has jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

**ANSWER NO. 5:**    AT&T admits that this Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1337 and 1367. AT&T denies the remaining allegations in paragraph 5.

6.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as AT&T has agents and transacts business in this district.

**ANSWER NO. 6:**    Denied.

## ALLEGATIONS COMMON TO ALL COUNTS

## PARTIES

7.    ITCD is an Alabama corporation with its principal place of business at 7037 Old Madison Pike Road, Suite 400, Huntsville, AL 35806. ITCD currently provides local exchange telephone service in Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.

**ANSWER NO. 7:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 7, and they are therefore denied.

8.    Business Telecom, Inc. is a North Carolina corporation with its principal place of business at 7037 Old Madison Pike Road, Suite 400, Huntsville, AL 35806. Business Telecom, Inc. currently provides local exchange telephone service in Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.

**ANSWER NO. 8:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 8, and they are therefore denied.

9.    Business Telecom of Virginia, Inc. is a Virginia corporation with its principal place of business at 7037 Old Madison Pike Road, Suite 400, Huntsville, AL 35806, and currently provides local exchange telephone service in Virginia.

**ANSWER NO. 9:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 9, and they are therefore denied.

10.    ITCD, Business Telecom, Inc., and Business Telecom of Virginia, Inc. are affiliated companies, and all are owned by the same parent company, ITC^DeltaCom, Inc.

**ANSWER NO. 10:**    AT&T is without knowledge of the truth or falsity of the allegations in paragraph 10, and they are therefore denied.

11.    AT&T Corp. is a New York corporation with its principal place of business at 1 AT&T Way, Bedminster, New Jersey 07921.  AT&T Corp. provides, among other things, telecommunications services throughout the United States, including in the District of Columbia. AT&T Corp. can be served with process by serving its registered agent for service of process: CT Corporation System, 1015 15th Street, N.W., Suite 1000, Washington, D.C. 20005.

**ANSWER NO. 11:**    Admitted.

12.    AT&T Communications, Inc. is a wholly owned subsidiary of AT&T Corp. AT&T Communications, Inc., with its principal place of business at 1 AT&T Way, Bedminster, New Jersey 07921, and can be served with process by serving its registered agent for service of process: CT Corporation System, 1015 15th Street, N.W., Suite 1000, Washington, D.C. 20005.

**ANSWER NO. 12:**    Admitted.

13.    The true names and roles of defendants DOES 1-20, inclusive, are unknown to Plaintiffs, which accordingly sues those defendants by fictitious names.  Plaintiffs believe and allege that each of the DOE defendants is legally responsible in some manner for the events alleged in this Complaint and the resulting injury and damages caused to Plaintiffs.  Plaintiffs will amend the Complaint to reflect the true names and roles of the DOE defendants when Plaintiffs obtain that information.

**ANSWER NO. 13:**    Denied.

14.    AT&T Corp. and its affiliates listed above, which are collectively referred to as "AT&T" throughout this complaint, effectively operate as a single enterprise.  AT&T has complete control and influence over these subsidiaries.  This control and influence includes, among other things, all decisions regarding the services AT&T's subsidiaries provide, the facilities they use, the traffic sent over those facilities, the agreements into which they enter, and the way they market and sell their service.  AT&T coordinates and controls one overarching position concerning all of these issues from its corporate headquarters.  AT&T and all of its subsidiaries also operate as a single integrated operation, under a nationwide brand.  AT&T has used each of these subsidiaries, individually and collectively, as a subterfuge to assist AT&T in conducting and perpetuating fraud.  In particular, AT&T has used these subsidiaries to conceal AT&T's interexchange traffic so that AT&T could avoid paying Plaintiffs' lawfully tariffed access charges.  AT&T routed interexchange traffic over facilities that these subsidiaries had

previously obtained for the express purpose of terminating primarily local traffic with Plaintiffs and other LECs. This enabled AT&T to disguise its interexchange traffic from Plaintiffs and other LECs, and, consequently, to avoid being billed access charges for this traffic. For the foregoing reasons, the subsidiaries listed above constitute alter egos of AT&T Corp.

**ANSWER NO. 14:**    Denied.

## BACKGROUND

### The Access Charge Regime

15.    This action centers on AT&T's non-payment for switched access charges owed to Plaintiffs in accordance with Plaintiffs' lawful tariffs and their contracts with AT&T. Access charges are the fees that long-distance carriers such as AT&T must pay local exchange carriers such as Plaintiffs to defray the costs associated with the use of local exchange facilities for originating and terminating long-distance calls. These switched access charges are established and mandated by federal and state regulations and tariffs as well as contracts, which are described in detail below.

**ANSWER NO. 15:**    AT&T admits that this suit concerns allegations of non-payment of access charges, but denies that it has any liability for such access charges. AT&T further admits that the rates at which local exchange carriers offer access services are generally found in tariffs and, in some cases, are contained in agreed-upon contracts. AT&T denies the remaining allegations in paragraph 15.

16.    Since the breakup of the Bell System in 1984, local exchange carriers ("LECs"), such as Plaintiffs, and long-distance carriers, such as AT&T, have played largely distinct roles in the telecommunications industry. LECs have primarily carried local calls - i.e., calls between end users located within local calling areas or exchanges. Long-distance carriers have traditionally carried calls between exchanges, on both an intrastate and interstate basis. This long-distance service is known as "interexchange" service.

**ANSWER NO. 16:**    AT&T admits that the Bell System was the subject of a consent decree that became effective on or about January 1, 1984, and that, in many cases up until 1996, local exchange carriers primarily carried local calls within an exchange and long distance carriers primarily carried long distance calls that traveled between exchanges. AT&T further

admits that long-distance service is sometimes referred to as "interexchange" service.  AT&T

denies the remaining allegations of paragraph 16.

17.    In order to provide interexchange service, long-distance carriers such as AT&T typically establish one or more points of presence (POPs) within a given area.  POPs are facilities that provide a point of interconnection between local exchange networks and interexchange networks.  When a customer makes an interexchange call, that customer's local exchange carrier transports the call over the local exchange carrier's network to the POP of the long-distance carrier that the customer has selected (say, AT&T).  The long-distance carrier then transports the call from the POP in the area where the calling party is located (i.e., where the call originates) to the POP in the area where the called party is located (i.e., where the call terminates).  The called party's local exchange carrier then receives the call from the long-distance carrier, either directly or through an intermediary, and delivers it to the called party.

**ANSWER NO. 17:**    AT&T admits that the allegations of paragraph 17 are accurate, in

a general sense, with respect to ordinary long-distance calls.  AT&T denies that the allegations of

paragraph 17 apply in every local exchange.  AT&T denies, for example, that it has a point of

presence in each local exchange.

18.    The transmission of an interexchange call from the calling party to a long-distance carrier's POP is known as "originating access."  The transmission of an interexchange call from a long-distance carrier's POP to the called party is known as "terminating access."

**ANSWER NO. 18:**    AT&T admits that the allegations of paragraph 18 are accurate, in

a general sense, with respect to ordinary long-distance calls.

19.    Federal and state tariffs (or, in the absence of a tariff, contracts between the carriers) dictate the appropriate originating and terminating access charges that apply to a given interexchange call, depending on whether the call is interstate or intrastate.  If the call originates in one state and terminates in another, the access charges that apply are set forth in interstate tariffs filed with the FCC.  If the call originates and terminates within the same state, the access charges that apply are set forth in intrastate tariffs filed with individual state regulatory commissions.

**ANSWER NO. 19:**    AT&T admits that the rates and other terms at which local

exchange carriers offer access services are generally found in tariffs and, in some cases, are

contained in agreed-upon contracts.  AT&T admits that intrastate calls, as a general matter, are

subject to tariffs that are typically filed with state public utility commissions and that generally

interstate calls are subject to tariffs typically filed with the FCC. AT&T denies the remaining allegations in paragraph 19.

20.    For historical and regulatory reasons beyond the scope of this Complaint, most LECs' intrastate access charges are often higher (in many cases, considerably so) than interstate access charges.

**ANSWER NO. 20:**    AT&T admits that the rates for intrastate access services offered by most local exchange carriers are often higher than the rates for interstate access services. AT&T denies the remaining allegations in paragraph 20.

21.    Local calls are subject to a different regulatory regime, called "reciprocal compensation." Under reciprocal compensation, the parties exchanging local traffic either agree on rate at which the carriers bill each other for termination of each other's local traffic (typically much lower than access charges) or the parties assume a relative balance of traffic and agree to an arrangement termed "bill and keep" in which no payments are exchanged between the carriers; rather carriers recover the costs of terminating traffic from their own customers.

**ANSWER NO. 21:**    AT&T admits that local calls typically do not incur access charges. AT&T admits that compensation for the exchange of local calls between carriers can be subject to a variety of types of "reciprocal compensation" arrangements. AT&T denies the remaining allegations in paragraph 21.

22.    Plaintiffs provide service over the majority of their local telephone lines using their own switches. Plaintiffs obtain switching capability to some of their other local customers by leasing capacity on a switch owned by an incumbent local exchange carrier (ILEC), pursuant to their rights under the federal Telecommunications Act of 1996 ("Act"). The rates Plaintiffs pay to lease switching capacity from the ILECs are established in accordance with section 252 of the Act and the regulations of the FCC, and are premised in part upon the design that Plaintiffs, rather than the ILEC, will bill and collect access charges from long-distance carriers such as AT&T.

**ANSWER NO. 22:**    AT&T admits that, to the extent competitive local exchange carriers lease switching capacity from incumbent local exchange carriers, the rates for such capacity are governed by the Telecommunications Act of 1996 and FCC regulations, which provide, among other things, that in such circumstances CLECs will bill any applicable access

charges.  AT&T is without knowledge of the truth or falsity of the remaining allegations in

paragraph 22, and they are therefore denied.

23.    Long-distance traffic destined for Plaintiffs' customers is delivered by the long-distance carrier, or another carrier acting on its behalf, to the ILEC's network, which routes the calls to Plaintiffs' customers.  The ILEC then provides Plaintiffs with records of each long-distance call as reported by the long-distance carrier that, if such records are accurate, enables Plaintiffs to assess and bill the appropriate interstate and intrastate terminating access charges to the long-distance carrier.

**ANSWER NO. 23:**    AT&T admits that some local exchange carriers are not directly

connected to interexchange carriers, and instead connect indirectly to interexchange carriers

through the networks of incumbent local exchange carriers.  AT&T is without knowledge of the

truth or falsity of the remaining allegations in paragraph 23, and they are therefore denied.

<u>AT&T's Obligations to Pay Access Charges to BTI and ITCD</u>

24.    During the entire relevant period, Plaintiffs have offered switched access charges pursuant to tariffs filed with the FCC (for interstate access services) and the respective state public utilities commissions in states where Plaintiffs operate as local exchange carriers (for switched intrastate access services).  The provisions of these tariffs are binding on AT&T and govern the rates, terms and conditions that BTI and ITCD may respectively offer switched access services.

**ANSWER NO. 24:**    AT&T admits that Plaintiffs have offered switched access services

in tariffs filed at the FCC and with some state public utility commissions.  AT&T denies the

remaining allegations in paragraph 24.

25.    Beginning in approximately 1998, a dispute arose between BTI and AT&T over AT&T's obligation to pay switched access charges under BTI's federal and state switched access tariffs.  AT&T claimed that the charges set forth in BTI's tariffs were excessive and refused to pay them, although it continued to use Plaintiffs' access services.  This dispute evolved into litigation between AT&T and BTI,  which the parties settled in June 2001.

**ANSWER NO. 25:**    AT&T admits that AT&T and BTI previously had a dispute

regarding BTI's switched access charges, and avers that AT&T claimed those rates were

excessive and that the FCC agreed and determined that BTI's access rates were unlawful.  AT&T

further admits that, in June 2001, AT&T and BTI settled certain litigation involving BTI's switched access services. AT&T denies the remaining allegations in paragraph 25.

26.     ITCD and AT&T also had a dispute regarding AT&T's failure to pay access charges that was settled in October 2002.

**ANSWER NO. 26:**  AT&T admits that ITCD and AT&T had a dispute regarding ITCD's switched access rates and that the dispute was settled in 2002. AT&T denies the remaining allegations in paragraph 26.

27.     Each settlement included the simultaneous execution of a contract that obligated AT&T to pay each Plaintiff's respective access charges on a going forward basis. Pursuant to the contract with BTI ("BTI Contract"), AT&T agreed to settle its dispute with BTI by paying an agreed amount for switched access services rendered by BTI through June 20, 2001. AT&T has paid that amount, and there is no dispute between AT&T and BTI for switched access services rendered prior to June 20, 2001 except, to the extent that, as explained below, AT&T defrauded BTI.

**ANSWER NO. 27:**  AT&T admits that there is an agreement between AT&T and BTI regarding BTI's switched access services. AT&T also admits that there is no dispute between AT&T and BTI for switched access services rendered prior to June 20, 2001. AT&T denies the remaining allegations in paragraph 27.

28.     As part of the BTI Contract, the parties also agreed as to the rates that AT&T would pay BTI for switched access services after June 20, 2001.

**ANSWER NO. 28:**  AT&T admits that the agreement between AT&T and BTI regarding BTI's switched access services contains rates for BTI's switched access services. AT&T denies the remaining allegations in paragraph 28.

29.     In October 2002, AT&T and ITCD entered into a contract ("ITCD Contract") similar to that entered into by BTI and AT&T. AT&T agreed to pay switched access charges in an amount certain to cover switched access charges ITCD billed AT&T through August 31, 2002. AT&T has paid that amount, and there is no dispute between AT&T and ITCD for switched access services rendered prior to August 31, 2002 except to the extent that, as explained below, AT&T defrauded BTI. The ITCD Contract also contained terms whereby AT&T agreed to pay ITCD for the provision of switched access charges AT&T incurred after August 31, 2002.

**ANSWER NO. 29:**    AT&T admits that there is an agreement between AT&T and ITCD regarding ITCD's switched access services.  AT&T also admits that there is no dispute between AT&T and ITCD for switched access services rendered through August 31, 2002.  AT&T denies the remaining allegations in paragraph 29.

<u>AT&T's Evasion of Interstate and Intrastate Access Charges</u>

30.    Beginning in or around 2000, AT&T began disguising long-distance interexchange calls it delivered to Plaintiffs and other LECs, thereby preventing Plaintiffs from detecting the interexchange nature of the calls and enabling AT&T to avoid being billed for the lawfully tariffed access charges that apply to such calls.  For example, AT&T repeatedly disguised interstate and intrastate long-distance calls as local calls, and in other cases disguised intrastate long-distance calls as interstate.  AT&T disguised calls by concealing, changing, causing to be concealed or changed, or otherwise misrepresenting the originating telephone number transmitted with the call, and by materially misrepresenting other information provided to Plaintiffs.  The information AT&T concealed, changed and/or misrepresented is information that is essential to the Plaintiffs' ability to identify whether calls are interexchange in nature and, if so, whether they are local, interstate long-distance or intrastate long-distance calls.

**ANSWER NO. 30:**    Denied.

31.    By design, AT&T's improper call-termination scheme prevented Plaintiffs from distinguishing between local traffic and interexchange traffic.  Plaintiffs were thus unable to bill for (or even to detect or measure) a great deal of interexchange voice traffic that AT&T delivered to Plaintiffs for termination.  Therefore, Plaintiffs could not reasonably have been expected to determine AT&T's actual use of their access services and bill AT&T the appropriate charge.

**ANSWER NO. 31:**    Denied.

32.    AT&T disguised, as described in paragraph 30 above, a substantial portion of its long-distance calls, apparently based upon the incorrect premise that the calls were not subject to access charges because they used Internet Protocol ("IP") for an intermediate portion of its transmission between AT&T POPs.

**ANSWER NO. 32:**    Denied.

33.    IP is a technology that was originally developed for use in connection with the public Internet.  Because IP is so efficient at carrying traffic, however, many carriers, including AT&T, have been implementing it on their private networks as well.  And, although IP was originally developed to carry data traffic generated by computers, technological advances over the past several years have made it possible to use IP to transmit ordinary voice traffic as well.

**ANSWER NO. 33:**    AT&T admits that it has used Internet Protocol on its network.

AT&T further admits that IP can be used to transmit both data and voice traffic.  AT&T denies

the remaining allegations in paragraph 33.

34.    In this respect, IP technology is simply the latest in an array of transmission
technologies used to transmit ordinary telephone calls from one point to another. Some carriers
use microwave transmission, others use fiber-optic cables, others use satellites, and still others
continue to use the copper wires that have been in use for decades.  As the FCC has recognized,
the mere choice of transmission technology makes no difference to the regulatory classification
of a telephone call or the applicability of access charges.  Instead, under the Communications
Act of 1934, 47 U.S.C. § 151 et seq., "telecommunications" is defined as "the transmission,
between or among points specified by the user, of information of the user's choosing, without
change in the form or content of the information as sent and received."  47 U.S.C. § 153(43).
Thus, under the Act and the FCC' long-standing rules, provided that the call begins and ends as
an ordinary, circuit-switched telephone call, the technology a carrier elects to use to facilitate its
transmission is irrelevant for purposes of access charges.

**ANSWER NO. 34:**    AT&T avers that the orders of the FCC and the text of the

Communications Act of 1934 speak for themselves, and no response is required.  Further, AT&T

avers that the last sentence of paragraph 34 states a legal conclusion, which is for the Court, and

to which no response is required.  AT&T denies the remaining allegations in paragraph 34.

35.    In order for a long-distance carrier to use an Internet backbone in the transmission
of ordinary long-distance voice traffic, it must perform what is known as a "protocol conversion"
on both ends of the call.  For example, in the case of an AT&T long-distance subscriber in New
York making a call to Washington, DC, the call (1) originates on the network of a local exchange
carrier in New York as an ordinary telephone call, (2) is handed off to AT&T in that format, (3)
is converted by AT&T into the IP format, (4) is transmitted by AT&T in the IP format on its
Internet backbone for some distance between New York and Washington (although not
necessarily the entire distance), (5) is converted back into an ordinary telephone call by AT&T or
a party acting on its behalf, (6) is handed to the local exchange carrier in Washington in that
format, and (7) is delivered to the called party in Washington by the local carrier.

**ANSWER NO. 35:**    Denied.

36.    In this scenario, neither the calling party in New York nor the called party in
Washington has any idea that their call has been converted to the IP format in the middle.  The
transmission of the call between or among points specified by the user, is dialed and received in
the same manner as any other long-distance call, and AT&T's service offers nothing more than
the transmission of information of the user's choosing, without a net change in the form or
content of the information as sent and received.  In fact, although AT&T has been performing
these protocol conversions and using IP to transmit an increasing portion of its customers' long-

distance telephone calls, it has continued to bill its customers for these calls as ordinary long-distance calls, it has not informed them that these protocol conversions were taking place, and it has not stopped paying LECs the originating access charges that apply to these calls. By paying LECs the originating access charges on these calls, AT&T acknowledged that they were switched access calls.

**ANSWER NO. 36:**    Denied.

37.    AT&T did, however, avoid paying terminating access charges for calls that it transmits using IP, by disguising those calls as local calls on the terminating end. As noted above, a long-distance call that AT&T transmits using IP is no different than a long-distance call using any of the other transmission technologies noted above, and the terminating LEC performs the same functions over the same facilities to deliver that call to the called party. In fact, the terminating LEC ordinarily would not even be aware of whether an interexchange call it receives from AT&T is transmitted using IP within AT&T's network, provided it is converted back into an ordinary telephone call before it is delivered to the terminating LEC.

**ANSWER NO. 37:**    Denied.

38.    In addition to its misclassification of calls using IP, AT&T, as described in paragraph 30 above, disguised certain intrastate (in-state) prepaid calling card long-distance calls as interstate calls (which are in most cases subject to lower access charges), when in fact the calling and called parties were located in the same state, purportedly based on the incorrect premise that the calls were not subject to intrastate access charges because AT&T routed the call through its 8YY (i.e., 800-number) platform in another state. In other cases, AT&T disguised interstate and intrastate prepaid calling card calls so as to avoid being billed for access charges altogether.

**ANSWER NO. 38:**    Denied.

39.    AT&T later attempted to justify this ruse by claiming that when a customer using such a card places a call to someone in the same state, the call would be considered interstate because it consists of two calls, one between the caller and the AT&T platform delivering the recorded advertisement and one between that platform and the called party, and that at least one of those "calls" is interstate.

**ANSWER NO. 39:**    With respect to AT&T's enhanced prepaid calling card service, AT&T admits that its service permitted cardholders to use AT&T's telecommunications network to make long distance calls and that, before placing a long distance call, cardholders must first access AT&T's prepaid calling card platform through a toll-free number. AT&T further avers that the prepaid calling card platform provides non-call information to the card holder and

performs other functions besides routing the call. AT&T denies the remaining allegations in paragraph 39.

40.    AT&T pursued both the IP and calling card access-avoidance schemes surreptitiously for several years. Then, in the wake of several criminal prosecutions of companies that had unlawfully evaded lawfully tariffed access charges, AT&T sought to cloak its behavior with the imprimatur of the FCC. Specifically, in October 2002, AT&T filed a petition with the FCC requesting that the FCC declare that a telephone call converted to IP, carried on an Internet backbone, and then converted back to an ordinary telephone call for termination was exempt from access charges. Then, in May 2003, AT&T filed another petition with the FCC requesting that the FCC declare that AT&T's prepaid calling card services as described above be deemed jurisdictionally interstate and therefore exempt from intrastate access charges.

**ANSWER NO. 40:**    AT&T admits that it filed a petition with the FCC in October, 2002, regarding AT&T's IP services. AT&T also admits that it filed a petition with the FCC in May, 2003, regarding AT&T's enhanced pre-paid calling card services. AT&T otherwise denies the allegations in paragraph 40.

41.    AT&T did not, however, wait for the FCC to rule on its petitions. Instead, even while its petitions were pending and unbeknownst to the Plaintiffs, AT&T continued its practice of improperly terminating long-distance calls to Plaintiffs and other LECs in a manner designed to evade the Plaintiffs' and other LECs' detection of the interexchange, and interstate and intrastate, nature of the calls and to avoid access charges on massive amounts of traffic.

**ANSWER NO. 41:**    Denied.

42.    Ultimately, the FCC unanimously rejected both of AT&T's petitions. First, on April 21, 2004, the FCC declared that, under its longstanding existing rules, the conversion of ordinary telephone traffic to IP and back again has no effect on the regulatory classification of the telephone call. The FCC further held that AT&T is required to pay access charges for all interexchange voice traffic that originates and terminates over circuit-switched local exchange networks, including traffic that is converted to IP and transmitted over AT&T's Internet backbone at some point in the middle and which is then delivered to Plaintiffs and other LECs over lines reserved for local use. The FCC accordingly authorized local telephone companies to pursue collection actions such as this one against AT&T for access charges that AT&T had failed to pay based on its unlawful scheme.

**ANSWER NO. 42:**    AT&T admits that the FCC issued two orders relating to AT&T's IP telephony service and AT&T's prepaid calling card services, but avers that the orders speak for themselves. AT&T denies the remaining allegations in paragraph 42.

43.     Then, on February 23, 2005, the FCC held that AT&T's prepaid calling card calls between callers located in the same state are intrastate telecommunications services subject to intrastate access charges, under the same "end to end" analysis that the Commission had applied to other calling card and other telecommunications services for many years. As in its April 21, 2004 order, the FCC again instructed local exchange carriers that claims for unpaid access charges be filed with an appropriate court or state commission rather than brought to the FCC.

**ANSWER NO. 43:**    AT&T admits that the FCC issued an order on February 23, 2005,

relating to AT&T's prepaid calling card services, but avers that the order speaks for itself.

AT&T denies the remaining allegations in paragraph 43.

44.     Until it filed the petitions with the FCC described in paragraph 40 above, AT&T fraudulently concealed its schemes to avoid access charges. Even when it filed these petitions, AT&T fraudulently misrepresented the extent to which it was engaging in such schemes.

**ANSWER NO. 44:**    Denied.

45.     Even after these FCC decisions, AT&T has continued to engage in practices to prevent Plaintiffs' detection of the interexchange, and interstate and intrastate, nature of calls and thereby attempt to avoid access charges, but apparently on a lesser scale.

**ANSWER NO. 45:**    Denied.

46.     Particularly in light of these FCC's decisions, AT&T has no excuse for continuing its scheme and its failure to pay Plaintiffs access charges for long-distance calls in accordance with Plaintiffs' state and federal tariffs, the BTI Contract and the ITCD Contract.

**ANSWER NO. 46:**    Denied.

## <u>COUNT I</u>
### (BREACH OF FEDERAL TARIFFS)

47.     Plaintiffs incorporate by reference as though fully set forth herein the allegations of paragraphs 1 through 46 of this Complaint.

**ANSWER NO. 47:**    AT&T hereby incorporates by reference, as though fully set forth

herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

48.     For the reasons set forth above and in the FCC Access Charge Order and FCC AT&T Calling Card Access Charges Order, pursuant to Plaintiffs' lawful Federal Tariffs, AT&T is liable to Plaintiffs for its failure to pay interstate access charges on interstate interexchange traffic that AT&T delivered to Plaintiffs for termination.

**ANSWER NO. 48:**    Denied.

49.    ITCD's interstate access charges for long distance calls are set forth in its F.C.C. Tariff No. 4. BTI's interstate access charges for long distance calls are set forth in its F.C.C. Tariff No. 4.

**ANSWER NO. 49:**    AT&T admits that tariffs contain the rates and other terms on which Plaintiffs offer certain of its access services.  AT&T denies the remaining allegations in paragraph 49.

50.    Each of Plaintiffs' federal tariffs provides, among other things, that AT&T must pay Plaintiffs tariffed access charges for both originating access and terminating access.

**ANSWER NO. 50:**    AT&T avers that paragraph 50 states a legal conclusion, and that conclusions of law are for the Court.  Further, the tariffs speak for themselves and no response is required.   Any remaining allegations in paragraph 50 are denied.

51.    Plaintiffs fully performed their obligations under their federal tariffs, except for those they were prevented from performing, those that they were excused from performing, or those that were waived by AT&T's misconduct as alleged herein.

**ANSWER NO. 51:**    Denied.

52.    AT&T failed to pay Plaintiffs for interstate switched access services in accordance with the federal tariffs.

**ANSWER NO. 52:**    Denied.

53.    AT&T materially violated Plaintiffs' federal tariffs by failing to pay the tariffed rates for the services it used.

**ANSWER NO. 53:**    Denied.

54.    Plaintiffs' have been damaged in an amount to be determined at trial.

**ANSWER NO. 54:**    Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## COUNT II
### (BREACH OF STATE TARIFFS)

55.    Plaintiffs incorporate by reference as though fully set forth herein the allegations of paragraphs 1 through 54 of this Complaint.

**ANSWER NO. 55:** AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

56. For the reasons set forth above and in the FCC Access Charge Order and FCC AT&T Calling Card Access Charges Order, AT&T is liable to Plaintiffs for its failure to pay intrastate access charges on intrastate interexchange traffic that AT&T delivered to Plaintiffs for termination.

**ANSWER NO. 56:** Denied.

57. ITCD's intrastate access charges for long distance calls except in North Carolina are set forth for the respective state in the following tariffs: Alabama Switched Access Tariff, Florida Switched Access Price List, Georgia Switched Access Tariff, Louisiana Switched Access Tariff, Mississippi Switched Access Tariff, South Carolina Switched Access Tariff, and Tennessee Switched Access Tariff.

**ANSWER NO. 57:** AT&T admits that tariffs contain the rates and other terms on which ITCD offers certain access services. AT&T denies the remaining allegations in paragraph 57.

58. Business Telecom, Inc.'s intrastate access charges for long distance calls except in North Carolina are set forth for the respective state in the following tariffs: Alabama P.S.C. Tariff No. 3, Florida Price List No. 2. Georgia Tariff No. 4, Kentucky Tariff No. 3, Louisiana P.S.C. Tariff No. 3, Mississippi Access Service Tariff No. 1, South Carolina Tariff No. 3, and Tennessee Tariff No. 2.

**ANSWER NO. 58:** AT&T admits that tariffs contain the rates and other terms on which BTI offers certain access services. AT&T denies the remaining allegations in paragraph 58.

59. Business Telecom of Virginia Inc.'s intrastate access charges for long distance within Virginia are set forth in its tariff VA. S.C.C. No. 2.

**ANSWER NO. 59:** AT&T admits that tariffs contain the rates and other terms on which BTI offers certain access services. AT&T denies the remaining allegations in paragraph 59.

60. Each of the tariffs listed above provide, among other things, that AT&T must pay Plaintiffs intrastate access charges for both originating access and terminating access.

**ANSWER NO. 60:**    AT&T avers that paragraph 60 states a legal conclusion, and that conclusions of law are for the Court.  Further, the tariffs speak for themselves and no response is required.  Any remaining allegations in paragraph 60 are denied.

61.    Plaintiffs fully performed their obligations under each of the tariffs listed above, except for those they were prevented from performing, those that they were excused from performing, or those that were waived by AT&T's misconduct as alleged herein.

**ANSWER NO. 61:**    Denied.

62.    AT&T materially violated the tariffs listed above by failing to pay the tariffed rates for the services it used.

**ANSWER NO. 62:**    Denied.

63.    Plaintiffs have been damaged in an amount to be determined at trial.

**ANSWER NO. 63:**    Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## <u>COUNT III (In the Alternative)</u>
(BREACH OF CONTRACTS)

64.    Plaintiffs incorporate by reference as though fully set forth herein the allegations of paragraphs 1 through 63 of this Complaint.

**ANSWER NO. 64:**    AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

65.    AT&T is obligated to pay Plaintiffs for interstate and intrastate switched access services in accordance with the BTI Contract and the ITCD Contract.

**ANSWER NO. 65:**    AT&T avers that paragraph 65 states a legal conclusion, and that conclusions of law are for the Court.  Further, the contract speaks for itself and no response is required.  Any remaining allegations in paragraph 65 are denied.

66.    Plaintiffs fully performed their obligations under the BTI Contract and the ITCD Contracts, respectively, except for those they were prevented from performing, those they were excused from performing, or those that were waived by AT&T's misconduct as alleged herein.

**ANSWER NO. 66:**    Denied.

67.    AT&T failed to pay BTI for interstate and intrastate switched access services in accordance with the BTI Contract, and AT&T failed to pay ITCD for interstate and intrastate switched access services in accordance with the ITCD Contract.

**ANSWER NO. 67:**    Denied.

68.    AT&T materially breached the BTI Contract and the ITCD Contract by failing to pay the agreed rates for the switched access services it used.

**ANSWER NO. 68:**    Denied.

69.    Except with respect to intrastate access charges in North Carolina, where Plaintiffs do not have intrastate access tariffs and therefore rely solely on the BTI Contract and the ITCD Contract, this Count is pleaded in the alternative, to the extent that Plaintiffs' Tariffs are determined not to apply.  In no way is this Count to be construed as an admission that the tariffs do not govern AT&T's obligations in this case.

**ANSWER NO. 69:**    AT&T admits that the Complaint purports to plead, in part, a claim

in the alternative, but denies that such pleading is appropriate.

70.    Plaintiffs have been damaged in an amount to be determined at trial.

**ANSWER NO. 70**    Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## <u>COUNT IV (In the Alternative)</u>
### (UNJUST ENRICHMENT)

71.    Plaintiffs incorporate by reference as though fully set forth herein the allegations of paragraphs 1 through 70 of this Complaint.

**ANSWER NO. 71:**    AT&T hereby incorporates by reference, as though fully set forth

herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

72.    For the reasons set forth above and in the FCC Access Charge Order and FCC AT&T Calling Card Access Charges Order, pursuant to the Contract and/or Plaintiffs' federal and state tariffs, AT&T is liable to Plaintiffs for its failure to pay interstate and intrastate access charges on interexchange traffic that AT&T delivered to Plaintiffs for termination.  This Count IV is pleaded solely in the alternative, in the unlikely event the contract and tariffs are determined not to apply to every instance of AT&T's alleged conduct.  In no way is this Count IV to be construed as an admission that the Contract and tariffs do not govern this case.

**ANSWER NO. 72:**   AT&T admits that the Complaint purports to plead a claim in the alternative, but it denies that such pleading is appropriate.   The remaining allegations in paragraph 72 are denied.

73.   By terminating interexchange calls carried by AT&T to Plaintiffs' local telephone customers, Plaintiffs permitted AT&T's long-distance subscribers to complete long-distance calls to Plaintiffs' customers.  Plaintiffs thereby conferred a benefit on AT&T.

**ANSWER NO. 73:**   Denied.

74.   AT&T understood that the termination of interexchange calls by Plaintiffs was important to AT&T's long-distance customers, and it accordingly appreciated and recognized that Plaintiffs' termination of interexchange calls carried by AT&T was a benefit to AT&T.

**ANSWER NO. 74:**   Denied.

75.   AT&T unjustly accepted and retained the benefit of Plaintiffs' call termination services without providing legally required compensation to Plaintiffs.

**ANSWER NO. 75:**   Denied.

76.   Plaintiffs have been damaged in an amount to be determined at trial.

**ANSWER NO. 76:**   Denied.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT V
### (FRAUD)

77.   Plaintiffs incorporate by reference as though fully set forth herein the allegations of paragraphs 1 through 76 of this Complaint.

**ANSWER NO. 77:**   AT&T hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

78.   AT&T committed fraud against Plaintiffs.  Specifically, AT&T knowingly, and with the intent to defraud, made or caused to be made misrepresentations and omissions of material facts, including, but not limited to the following:

(a)   AT&T made public statements that sought to falsely minimize the volume of interexchange traffic that it was delivering to Plaintiffs and other local exchange carriers for termination without payment of the appropriate access charges;

(b)    AT&T disguised long-distance calls placed by AT&T customers to Plaintiffs' local customers by concealing, changing, causing to be concealed or changed, or otherwise misrepresenting the originating telephone number transmitted with the call, and by misrepresenting other information provided to Plaintiffs, all of which was essential to Plaintiffs' ability to properly identify calls as interstate and intrastate interexchange calls;

(c)    AT&T provided Plaintiffs with false and incorrect information as to the relative percentages of interstate long-distance, intrastate long-distance, and local calls that AT&T delivered to other carriers to be delivered to Plaintiffs; and

(d)    AT&T failed to put Plaintiffs on notice with specificity of its practice of avoiding access charges for interexchange traffic, or of the extent to which AT&T adopted and employed this practice.

**ANSWER NO. 78:**    Denied.

79.  These misrepresentations and omissions were false and misleading at the time they were made.

**ANSWER NO. 79:**    Denied.

80.  AT&T made each of these misrepresentations and/or omissions with knowledge of their falsity or recklessly without regard for their truthfulness as a positive assertion, with the intent to deceive Plaintiffs, and with the intent to induce Plaintiffs to act in the manner herein alleged.

**ANSWER NO. 80:**    Denied.

81.  Indeed, on a daily basis through the time period relevant to this Complaint, AT&T represented to its customers (but not to Plaintiffs), in bills and otherwise, that the interexchange calls that it delivered to Plaintiffs were in fact long-distance calls because it billed them long distance rates.

**ANSWER NO. 81:**    Denied.

82.  Moreover, AT&T paid at least hundreds of millions of dollars in originating access charges on the same calls that it disguised as local calls so as to mislead Plaintiffs and other LECs into believing that no terminating access charges were due.  Any claim by AT&T that it did not know that terminating access charges were due on these calls is contradicted by the fact that it paid the originating access charges on at least many of the same calls without disputing the bills it received for originating access charges.  AT&T knew that these calls were long distance calls that were subject to access charges.  It paid the originating access charges because in most cases it had no way to conceal the nature of these calls from the LECs providing originating access.  But because it conceived of a scheme to deceive these same LECs, when they provided terminating access, into believing that these calls were local calls, it knowingly used this

deceitful scheme in an effort to cheat Plaintiffs and other LECs out of hundreds of millions of dollars in terminating access charges.

**ANSWER NO. 82:** Denied.

83. Plaintiffs were, in fact, deceived by AT&T's misrepresentations and omissions.

**ANSWER NO. 83:** Denied.

84. Plaintiffs reasonably and justifiably relied to their detriment on AT&T's misrepresentations and omissions. Plaintiffs had no reason to believe that AT&T was engaging in trickery to avoid paying terminating access charges on such calls. Due to AT&T's fraudulent conduct, Plaintiffs were unable to bill for (or even to detect or measure) the interexchange traffic that AT&T terminated on Plaintiffs' local networks, nor were Plaintiffs able to ascertain the volume of inter exchange traffic that AT&T was delivering for termination without payment of access charges. The truth about the scope of AT&T's unlawful conduct accordingly remained within the peculiar knowledge of AT&T, which engaged in deceptive acts calculated to mislead and thereby obtain an unfair advantage.

**ANSWER NO. 84:** Denied.

85. Plaintiffs were damaged as a direct and proximate result of AT&T's misrepresentations and omissions in an amount to be determined at trial. Such damages include, but are not limited to, the following:

       (a)     The access charges that AT&T avoided paying;

       (b)     The additional costs to Plaintiffs since discovery of AT&T's scheme of using complex and costly methods to determine and prove the amount of access charges that AT&T avoided through its fraudulent scheme; and

       (c)     The opportunity cost of the delay in receiving funds during a time period when capital was extraordinarily difficult for CLECs such as Plaintiffs to raise.

**ANSWER NO. 85:** Denied.

## ANSWER TO PRAYER FOR RELIEF

AT&T denies that Plaintiffs are entitled to any of the relief they seek.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' Complaint is barred because it fails to state claims upon which relief can be granted.

### Second Affirmative Defense

Plaintiffs' Complaint is barred by the doctrine of accord and satisfaction.

### Third Affirmative Defense

Plaintiffs' Complaint is barred to the extent that the claims are outside the applicable statutes of limitations.

### Fourth Affirmative Defense

Plaintiffs' Complaint is barred by the doctrines of waiver and estoppel.

### Fifth Affirmative Defense

Plaintiffs' Complaint is barred by the doctrine of laches and unclean hands.

### Sixth Affirmative Defense

Plaintiffs' state law contract and unjust enrichment claims are preempted by federal law and/or are foreclosed by state statutory law.

### Seventh Affirmative Defense

Plaintiffs' Complaint is barred because it is foreclosed and preempted by the federal statutory requirement that charges for the transport and termination of telecommunications be cost-based.

**Eighth Affirmative Defense**

Plaintiffs' Complaint is barred because Plaintiffs' attempt to collect access charges for past periods constitutes an unjust, unreasonable, and discriminatory charge and practice in violation of the Communications Act and state law.

**Ninth Affirmative Defense**

Plaintiffs' request for retroactive damages is barred because such retroactive recovery would be inequitable and unlawful.

**COUNTERCLAIMS OF AT&T**

AT&T for its Counterclaims against Plaintiffs, states as follows:

**JURISDICTION AND VENUE**

1.    These Counterclaims are filed in part to collect damages caused by illegal acts of Plaintiffs/Counterclaim Defendants ITC^DeltaCom Communications, Inc., Business Telecom, Inc., and Business Telecom of Virginia, Inc., common carriers subject to the Communications Act of 1934, as amended by the Telecommunications Act of 1996. These Counterclaims therefore arise under Section 206 of the Communications Act of 1934, 47 U.S.C. § 206, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and 47 U.S.C. § 207. In addition, this Court has jurisdiction over AT&T's state-law Counterclaims pursuant to 28 U.S.C. § 1367.

2.    Personal jurisdiction over the Plaintiffs/Counterclaim Defendants is appropriate in this district.

3.    To the extent that the Court finds that venue is proper in this district regarding the claims in Plaintiffs/Counterclaim Defendants' complaint, then venue is proper in this judicial

district under 28 U.S.C. § 1391(b) because Plaintiffs/Counterclaim Defendants have agents that transact business in the district.

## PARTIES

4.     Defendant/Counterclaim Plaintiff AT&T Corp. is a New York corporation with its principal place of business in Bedminster, New Jersey.  AT&T Corp. provides, among other things, telecommunications services throughout the United States, including in the District of Columbia.

5.     The Plaintiffs/Counterclaim Defendants are ITC^DeltaCom Communications, Inc., Business Telecom, Inc., and Business Telecom of Virginia, Inc.

6.     ITC^DeltaCom Communications, Inc. is an Alabama corporation with its principal place of business at 7037 Old Madison Pike Road, Suite 400, Huntsville, AL 35806.

7.     Business Telecom, Inc. is a North Carolina corporation with its principal place of business at 7037 Old Madison Pike Road, Suite 400, Huntsville, AL 35806.

8.     Business Telecom of Virginia, Inc. is a Virginia corporation with its principal place of business at 7037 Old Madison Pike Road, Suite 400, Huntsville, AL 35806.

9.     Upon information and belief, ITC^DeltaCom Communications, Inc., Business Telecom, Inc., and Business Telecom of Virginia, Inc., are affiliated companies, and all are owned by the same parent company, ITC^DeltaCom, Inc.

## BACKGROUND

10.     Plaintiffs/Counterclaim Defendants seek, through this proceeding, to collect millions of dollars in access charges with respect to phone-to-phone IP telephony service and enhanced prepaid service calls that AT&T delivered to Plaintiffs/Counterclaim Defendants during the past several years.   AT&T delivered phone-to-phone IP telephony service and

enhanced prepaid service calls to Plaintiffs/Counterclaim Defendants for completion to the called parties. AT&T paid all applicable charges for Plaintiffs/Counterclaim Defendants' completion of those calls. With respect to the phone-to-phone IP telephony service and certain of the enhanced prepaid service calls at issue, Plaintiffs/Counterclaim Defendants now contend that AT&T should have paid higher access charges set forth in Plaintiffs/Counterclaim Defendants' contracts or Plaintiffs/Counterclaim Defendants' federal and state access tariffs. With respect to certain other enhanced prepaid service calls at issue, Plaintiffs/Counterclaim Defendants allege that AT&T should have paid the higher intrastate access charge rates, and not the lower interstate access charge rates, set forth in Plaintiffs/Counterclaim Defendants' contracts or Plaintiffs/Counterclaim Defendants' federal and state access tariffs. In particular, Plaintiffs/Counterclaim Defendants allege that they are entitled to collect additional access charges under Plaintiffs/Counterclaim Defendants' contracts and various state and federal access tariffs.

11. AT&T denies that it has any liability to Plaintiffs/Counterclaim Defendants under Plaintiffs/Counterclaim Defendants' contracts or Plaintiffs/Counterclaim Defendants' federal and state access tariffs in connection with the phone-to-phone IP telephony service and enhanced prepaid service calls that Plaintiffs/Counterclaim Defendants terminated. In the event it is determined that AT&T has liability for access charges under Plaintiffs/Counterclaim Defendants' contracts or Plaintiffs/Counterclaim Defendants' federal and state access tariffs, however, AT&T counterclaims that any contract or federal and state access tariff provisions determined to require AT&T to pay access charges on the past period phone-to-phone IP telephony service and enhanced prepaid service calls that are the subject of this lawsuit are unjust, unreasonable and discriminatory in violation of the federal Communications Act and state law. Among other

things, it would be unjust, unreasonable and discriminatory for Plaintiffs/Counterclaim Defendants to collect additional access charges under its contract or tariffs when Plaintiffs/Counterclaim Defendants have not issued any bills for such charges to AT&T (as required by Plaintiffs/Counterclaim Defendants' contracts or its own access tariffs as a condition precedent to payment obligations), AT&T has not refused to pay such bills, Plaintiffs/Counterclaim Defendants have offered AT&T other services and has accepted, without protest, AT&T's payments for those different services, AT&T has relied upon these arrangements to make substantial investments in infrastructure, AT&T has complied in all material respects with the terms of the tariffs and contracts under which it exchanged this traffic with Plaintiffs/Counterclaim Defendants, and Plaintiffs/Counterclaim Defendants have not (until years after the fact) sought retroactive payment of access charges under its federal and state access tariffs.

12.     Plaintiffs/Counterclaim Defendants are common carriers, public utility and public service corporations within the meaning of the Communications Act and state law, respectively, and act in these capacities to the extent they provide access services to AT&T.

13.     Sections 201 and 202 of the Communications Act and analogous state statutes deem illegal all "unjust" "unreasonable" and "discriminatory" charges and practices by common carriers.  *See, e.g.*, 47 U.S.C. §§ 201, 202.  Retroactive imposition and collection of access charges under the circumstances presented here would be unjust, unreasonable and discriminatory in violation of these laws, and Plaintiffs/Counterclaim Defendants' contracts and Plaintiffs/Counterclaim Defendants' access charge tariff provisions are unjust, unreasonable and discriminatory to the extent that they are deemed to apply to the phone-to-phone IP telephony service and enhanced prepaid service calls at issue in this case.

## COUNT I
### (Violating 47 U.S.C. §§ 201 and 202 by Retroactive Imposition of Access Charges)

14.     AT&T incorporates the preceding paragraphs of the Counterclaims as if set forth here.

15.     Under federal law, unjust, unreasonable and discriminatory tariff provisions are unlawful.  Moreover, it is unlawful for a common carrier to impose unjust, unreasonable or discriminatory charges or to engage in unjust, unreasonable or discriminatory practices, including unjust or unreasonable applications of its tariffs.  47 U.S.C. §§ 201, 202.  To the extent that they are deemed to require payment of access charges on the past period phone-to-phone IP telephony service and enhanced prepaid service calls at issue in this case, the contracts and federal access tariff provisions that Plaintiffs/Counterclaim Defendants assert here are unjust, unreasonable and discriminatory and impose unjust, unreasonable and discriminatory charges in violation of the Communications Act.  Retroactive imposition of access charges under Plaintiffs/Counterclaim Defendants' contracts and Plaintiffs/Counterclaim Defendants' federal access tariffs under the circumstances presented here would be unjust, unreasonable and discriminatory in violation of the Communications Act, and would cause substantial damage to AT&T.

## COUNT II
### (Violating State Law Prohibitions Against Unjust, Unreasonable And Nondiscriminatory Tariffs, Charges And Practices by Retroactive Imposition of Access Charges)

16.     AT&T incorporates the preceding paragraphs of the Counterclaims as if set forth here.

17.     Under state law, unjust, unreasonable and discriminatory contracts and tariff provisions are unlawful.  Moreover, it is unlawful for a common carrier to impose unjust, unreasonable and discriminatory charges or to engage in unjust, unreasonable or discriminatory

practices.  To the extent that they are deemed to require payment of access charges on the past period phone-to-phone IP telephony service and enhanced prepaid service calls at issue in this case, Plaintiffs/Counterclaim Defendants' contracts and Plaintiffs/Counterclaim Defendants' state access tariffs are unjust, unreasonable and discriminatory and impose unjust, unreasonable and discriminatory charges in violation of these state laws. Retroactive imposition of access charges under Plaintiffs/Counterclaim Defendants' contracts and Plaintiffs/Counterclaim Defendants' state access tariffs under the circumstances presented here would be unjust, unreasonable and discriminatory in violation of these state laws, and would cause substantial damage to AT&T.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff AT&T respectfully requests that the Court enter judgment in its favor against Plaintiffs/Counterclaim Defendants ITC^DeltaCom, Inc., Business Telecom, Inc., and Business Telecom of Virginia, Inc., and that it grant AT&T the following relief:

(a)    Money damages to be proven at trial, plus prejudgment interest;

(b)    Restitution;

(c)    All costs and attorney's fees incurred by AT&T;

(d)    Preliminary and permanent injunctive relief enjoining Plaintiffs/Counterclaim Defendants from continuing to engage in the unlawful conduct complained of; and

(e)    Such other relief as the Court deems appropriate.

AT&T hereby demands a jury trial on all issues and claims so triable.

August 22, 2005                          Respectfully submitted,

                                         /s/ Michael J. Hunseder

                                         _____
                                         David M. Schiffman
                                         Sidley Austin Brown & Wood, LLP
                                         Bank One Plaza
                                         10 South Dearborn
                                         Chicago, Illinois 60603
                                         Phone:  (312) 853-7782
                                         Fax:     (312) 853-7036

                                         Paul M. Zidlicky (DC Bar No. #450196)
                                         Michael J. Hunseder (DC Bar No. #447260)
                                         Sidley Austin Brown & Wood, LLP
                                         1501 K Street, N.W.
                                         Washington, DC  20005
                                         Phone:  (202) 736-8000
                                         Fax:     (202) 736-8711

*Attorneys for Defendants AT&T Corp. and AT&T Communications, Inc.*