IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ITC^DeltaCom Communications, Inc.; Business Telecom, Inc.; Business Telecom of Virginia, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> AT&T Corp.; AT&T Communications, Inc.; DOES 1-20 <br><br> Defendants | 1:05cv01360 (ESH) |

## JOINT PROPOSED SCHEDULING PLAN

Plaintiffs, ITC^DeltaCom Communications, Inc.; Business Telecom, Inc.; Business Telecom of Virginia, Inc. ("ITCD") ,and Defendants AT&T Corp. et al. ("AT&T"), pursuant to Local Rule 16.3 and this Court's Order for Initial Scheduling Conference August 24, 2005, submit their Joint Proposed Scheduling Plan as follows:[1]

### I.   BRIEF SUMMARY OF THE LITIGATION

(a)   <u>Brief description of the case</u>.  This is a telecommunications case between plaintiffs, competitive local exchange carriers, and AT&T, a long distance and competitive local exchange carrier.  The case involves plaintiffs' claim for access charges on two types of calls: (1) voice calls that AT&T transmitted using phone-to-phone Internet Protocol (IP) telephony technology and (2) calls made using AT&T prepaid calling cards.  The case also involves AT&T's counterclaim that plaintiffs' effort to collect access charges for past billing periods constitutes an unjust, unreasonable and discriminatory practice in violation of the federal Communications Act and state law.

---

[1]   The Joint Proposed Scheduling Plans submitted to the Court today in Civil Action Nos. 05-1360, 05-1416, and 05-1432 are substantively identical.

- 1 -

(b)     Other related litigation. Several other actions have been brought against AT&T alleging substantially similar claims. All of the actions listed below allege the same claims, except that the first *Qwest* case pertains to AT&T's phone-to-phone IP telephony service while the second *Qwest* case pertains to AT&T's prepaid calling cards:

   A. *Qwest Corp.* v. *AT&T Corp., et al.*, No. 1:05-cv-00375-REB-BNB (D. Colo.)

   B. *Qwest Corp.* v. *AT&T Corp., et al.*, No. 1:04-cv-00909-EWN-MJW (D. Colo.)

   C. *BellSouth Telecommunications, Inc. v. AT&T Corp. et al.*, 05-CV-1397 (N.D. Ga.)

   D. *Sage Telecom, Inc.* v. *AT&T Corp., et al.*, No. 4:05CV587(FRB) (E.D. Mo.)

   E. *RCN Telecom Services, Inc.* v. *AT&T Corp., et al.*, Civil Action No. 05-1416 (ESH) (D.D.C.)

   F. *Granite Telecommunications, LLC, v. AT&T CORP., et al.,* Civil Action No. 05-1416 (ESH) (D.D.C.)

   G. *McClure Telephone Co. v. AT&T, Corp., et al.*, Civil Action No. 05-cv-01681 (ESH) (D.D.C.)

   H. *Lexcom Telephone Co. v. AT&T Corp., et al*., Civil Action No. 05-cv-01740 (ESH) (D.D.C.)

## II.   MATTERS TO BE DISCUSSED BY THE PARTIES

**1.     Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.**

There will likely be dispositive motions as to some portions of the case, but it is premature to predict whether the entire case is likely to be disposed of by dispositive motions.

**2.     The date by which any other parties should be joined or the pleadings amended, and whether some or all of the factual and legal issues can be agreed upon or narrowed.**

The parties agree that any motions for leave to amend pleadings or to join additional parties shall be filed at least 60 days before the close of fact discovery.

**3.     Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

The parties have agreed that this case is not appropriate for assignment to a magistrate judge.

**4.     Whether there is a realistic possibility of settling the case.**

The parties believe that mediation at an early date could lead to a settlement of this case. See the response to Item 5.

**5.     Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be take to facilitate the ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

The parties have had discussions about the timing of a mediation and also about the structure of a mediation given the pendency of similar actions by different plaintiffs. If the parties reach an agreement that mediation under the Court's ADR procedures is the best way to proceed, they will promptly advise the Court.

**6.     Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

The parties have not agreed to a deadline for filing dispositive motions. For an explanation of the parties' positions as to scheduling disagreemen

ts, see Parts III and IV below.[2] Plaintiffs propose a deadline of **September 11, 2006**. Defendants propose a deadline of **April 30, 2007**. Regardless of the deadline, the parties are agreed that oppositions shall be due 28 days after the motions are filed, and replies 14 days thereafter.

**7.     Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), F.R. Civ. P., and if not, what if any changes should be made in the scope, form or timing of those disclosures.** The parties agree that each side shall provide initial disclosures, as provided under Fed R. Civ. P. 26(a)(1), by **September 28, 2005.**

---

[2]     Plaintiffs' Proposed Scheduling Order is attached as Exhibit A; Defendants' Proposed Scheduling Order is attached as Exhibit B.

**8.     The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admission, and depositions.**

The parties agree to coordinate discovery between this action and the actions referred to in Section I(b) as E-H, above (the "Coordinated Actions"). Unless the parties otherwise agree or the Court so orders, no individual shall be deposed more than once in the Coordinated Actions.

Discovery Plan.

(i)     The parties disagree about the deadline for completing fact discovery. Plaintiffs propose that all fact discovery shall be commenced in time to be completed by **April 30, 2006**. Defendants propose that all fact discovery shall be commenced in time to be completed by **November 30, 2006**.

(ii)    The parties agree that the plaintiffs in the Coordinated Actions collectively may take fifteen depositions of AT&T and its current and former employees and that AT&T may take ten depositions of the current and former employees of each plaintiff.

(iii)   The parties agree that the plaintiffs collectively in the Coordinated Action may propound up to 50 interrogatories, and AT&T may likewise propound up to a total of 50 interrogatories. To the extent that AT&T propounds identical interrogatories of more than one plaintiff or that more than one plaintiff propounds identical interrogatories of AT&T, such identical interrogatories shall count as only one interrogatory for purposes of the foregoing limit.

(iv)    The parties do not anticipate the need for physical or mental examinations.

  (v)  The parties agree to discuss issues relating to the discovery of electronic documents. If an agreement cannot be reached within 15 days, either party may request a conference with the Court.

  (vi)  The parties will confer and jointly submit a proposed protective order governing the exchange of confidential business information during discovery.

  (vii)  At this time, the parties are not aware of any other matters pertinent to the completion of discovery in this case.

**9. Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), F.R. Civ. P., should be modified, and whether and when depositions of experts should occur.**

The parties disagree on the schedule for expert discovery, as set forth herein. Each party should be required to disclose any experts and provide the information required by Fed.R.Civ.P. 26(a)(2) on any issue as to which it has the burden of proof by **May 31, 2006 (plaintiffs' proposal) or December 31, 2006 (AT&T's proposal)**. Those experts shall be deposed between 20 and 50 days thereafter. Each party should be required to disclose any experts and provide the information required by Fed.R.Civ.P. 26(a)(2) with respect to rebuttal (or any issues as to which the party does not have the burden of proof) by **June 30, 2006 (plaintiffs' proposal) or January 31, 2006 (AT&T's proposal)**. Such experts shall be deposed between 20 and 50 days thereafter.

**10. In class actions, appropriate procedures for dealing with Rule 23 proceedings.**

This case is not a class action, and no procedures are necessary to address Rule 23.

**11. Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

The parties do not have any proposals for bifurcation at this time.

**12.    The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter)**

Plaintiffs propose a final pretrial conference no later than **November 19, 2006**. Defendants propose a final pretrial conference in **July 2007**.

**13.    Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

The parties have agreed that at the first scheduling conference, the Court should provide that a trial date will be set at the final pretrial conference from 30 to 60 days after that conference.

**14.    Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

The parties will advise the Court prior to the final pretrial conference as to what issues the parties will seek to try to a jury.

### III.    PLAINTIFFS' POSITION

AT&T's overly protracted proposed schedule appears to be its first volley in an attempt to complicate these cases far beyond the legitimate stakes involved. AT&T's proposal would deny plaintiffs their right to the "inexpensive" and "speedy" administration of justice, in contravention of Fed. R. Civ. Proc. 1 that directs that the Rules "shall be construed and administered so as to secure the just, speedy, and inexpensive determination of justice." By contrast, plaintiffs' reasonable proposal affords AT&T more time than the District Court in Colorado found necessary for litigation of Qwest's similar but substantially larger claim against AT&T.

The parties agree that these cases involve amounts that AT&T allegedly owes plaintiffs for access charges for Internet Protocol (IP) calls ("Issue 1") and prepaid calling card calls ("Issue 2"). In both cases, the expert federal agency with jurisdiction, the Federal

- 6 -

Communications Commission ("FCC"), has held that the particular type of call at issue requires payment of the access charges that plaintiffs seek and the FCC has directed parties in plaintiffs' situation to file their claims "in the appropriate court."

These cases are not the first filed against AT&T on these issues by carriers situated similarly to plaintiffs. As noted in Section I, above, four prior pending cases have involved these issues, and one of them (involving Qwest Corp., designated as "B") has been pending since May 5, 2004. Another case was filed against AT&T on April 22, 2004, in the Eastern District of Missouri (*Southwestern Bell Telephone, L.P., et al. v. AT&T Corp, et al.*, Case No. 4:04cv474 HEA). As disclosed in AT&T's most recent 10-Q, that case was fully resolved by means of a mutual settlement reached between SBC and AT&T in which AT&T paid SBC approximately $60 million.

Qwest's case relating to Issue 1 has proceeded through extensive discovery, in which AT&T asserts that it reviewed 3,000,000 pages of documents and produced 500,000 pages. AT&T should not need an extended period to produce the documents requested by plaintiffs relating to Issue 1. In particular, AT&T attributes the time that it took AT&T to produce documents in the first Qwest case to its need to screen for privilege "large numbers of documents [that] had indications of being privileged." Now that this set of documents has already been screened for privilege, subsequent reviews should require substantially less time for AT&T to process.

As for Issue 2, AT&T seeks delay principally on the basis of its claim that it would need to review an additional 9,000,000 pages. However, the United States District Judge presiding over Qwest's second case, which involves Qwest's Issue 2 claim, afforded AT&T significantly less time than the schedule proposed here by plaintiffs, in a case with much larger stakes for

AT&T than any of the cases here.  It is implausible that AT&T would spend millions of dollars to have its counsel re-read each of these documents for these cases, which involve substantially smaller plaintiffs and lesser damages than the Southwestern Bell, Qwest, and BellSouth cases.  In addition, given their smaller size, plaintiffs do not wish to incur the legal expense of reviewing even as many as the 500,000 pages that AT&T produced to Qwest in Qwest's first case, let alone ask for any substantial number of additional documents, other than data relating to their own particular damages, which are unlikely to present privilege questions.

Plaintiffs have no interest in paying their counsel to review mountains of documents when as the result of the FCC's rulings on liability, the primary focus of these cases should be on the specific damages to which each Plaintiff is entitled.  It is true that as to Issue 1, the FCC's ruling avoided holding that AT&T was liable for calls prior to its ruling.  The FCC held, however, that going forward, AT&T owed plaintiffs and others similarly situated under the same tariffs that had they had used in the past.  Given the FCC's determination that AT&T owes access charges under those tariffs, the filed tariff doctrine, *AT&T Corp. v. Central Office Tel. Corp.*, 524 U.S. 214 (1998) dictates that AT&T cannot avoid liability for the access service it received under those tariffs prior to the FCC's ruling.  Accordingly, Plaintiffs intend to focus their discovery primarily on the extent to which AT&T's unlawful practices have damaged each Plaintiff.

The table below compares the court-ordered timetable in the second Qwest litigation where discovery is just getting started)with the proposals of the parties in these cases. AT&T has not provided an adequate explanation why it is necessary for these cases to proceed so much more slowly than the Qwest case, which appears to involve the same issues, but much more damages.

| Deadline | Qwest Court Order | Plaintiffs' Proposal | AT&T Proposal |
|---|---|---|---|
| Initial expert reports | 2/24/06 | 5/31/06 | 12/31/06 |
| Close of all discovery | 5/19/06 | 8/19/06 | 3/22/07 |
| Dispositive motions | 7/5/06 | 9/11/06 | 4/30/07 |

AT&T's claim that it cannot process 9,000,000 pages of documents related to Issue 2 in accordance with plaintiffs' proposed schedule is belied by the fact that under the order in the Qwest case, it is already required to do so on a more rapid schedule. AT&T also suggests that the cases should involve a "common schedule," implying that the BellSouth schedule should be adopted here. But it is just as logical for this Court to be guided by the Qwest schedule, since AT&T will have to review its documents in accordance with that schedule in any event. Moreover, AT&T and BellSouth have stipulated that they will not begin discovery until November 1, 2005, while plaintiffs here are ready to serve their initial discovery by the end of next week. In addition, AT&T and BellSouth have agreed to deposition limits of 20 per side, while AT&T and the instant plaintiffs have agreed to limits of 10 and 15 depositions.

Given that AT&T already has significant experience with these types of cases, and given that another federal district court has found the need for substantially less time than the plaintiffs propose here, it should be evident that the plaintiffs have offered AT&T more than sufficient time for the conduct of the case. AT&T's proposal would subject plaintiffs to unnecessary and unwarranted additional costs and delay, and should therefore be rejected.

## IV.    AT&T'S POSITION

The schedule that AT&T has proposed is virtually identical to the one that Judge Thrash entered on August 30, 2005, in a case with virtually identical allegations, *BellSouth*

*Telecommunications, Inc. v. AT&T Corp. et al.*, 05-CV-1397 (N.D. Ga.) (available on PACER). There too the plaintiff requested an unreasonably short period to complete discovery, but the court adopted AT&T's schedule which, as shown below, is itself quite aggressive.

In this case, as in *BellSouth*, plaintiff has raised claims relating to two distinct AT&T services: (1) AT&T's phone-to-phone Internet Protocol ("IP") telephony service and (2) AT&T's prepaid calling card service. As noted above, those two services are the subject of separate lawsuits brought by Qwest. The first case, No. 04-N-909 (D. Colo.), was limited to the IP telephony service. In that case, AT&T gathered more than 3,000,000 pages of documents and produced more than 500,000 pages to Qwest. This effort required approximately *ten months* to complete, even though at the peak AT&T had approximately 20 lawyers working full time on document review. A major reason that the production took so long is that large numbers of documents had indications of being privileged, thereby requiring more intensive scrutiny. That case was filed in May 2004, and the court set a fact discovery cut-off date in October 2005, *17 months later*.[3] Plaintiff also alludes to *Southwestern Bell Telephone, L.P., et al. v. AT&T Corp, et al.*, Case No. 4:04cv474 HEA (E.D. Mo.). That case too involved only the IP telephony service. It was filed in April 2004, and the court set a discovery cut-off date in March 2006, *22 months later*. That case settled before much discovery occurred.

AT&T's burdens are much greater here (and in the *BellSouth* case) than they are in either the *Qwest* or *Southwestern Bell* cases because plaintiff has added claims relating to AT&T's prepaid calling card programs. In connection with those claims, AT&T has thus far collected over 9,000,000 pages that will have to be reviewed. *That review has not yet begun for any*

---

[3] On August 5, 2005, the *Qwest* court stayed discovery and certified for interlocutory appeal its order granting partial summary judgment to AT&T. The various orders cited herein will be provided to the Court upon request.

*lawsuit.* AT&T has every reason to believe that production from these 9,000,000 pages of documents will require at least as much time (ten months). And, in addition to reviewing the prepaid calling card documents, AT&T will need to respond to plaintiff's requests for IP documents. To the extent that plaintiff requests documents that Qwest did not seek – such as documents pertaining to AT&T's dealings with plaintiff (as opposed to AT&T's dealings with Qwest) – those materials will need to be reviewed for privilege. (AT&T did not conduct a privilege review of IP documents that were not requested by Qwest.)

In short, AT&T believes, and Judge Thrash agreed, that a reasonable date for completion of fact discovery is November 2006. Plaintiff's proposed April 2006 cut-off is not reasonable given the volume of material involved. Plaintiff points to the schedule in the *second* Qwest case, No. 05-RB-0375 (D. Colo.), but the court there set a later cut-off date (May 2006) than plaintiff has proposed here, for a case that was filed two months *earlier* and that involves *only* prepaid calling card claims – not the IP calling card claims that plaintiff here also alleges.

Plaintiff evidently believes that a shorter discovery schedule is warranted because it is seeking a smaller damage recovery than BellSouth, Qwest or Southwestern Bell. But the size of each plaintiff's *individual* claim fact does not reduce the number of documents AT&T must review. Indeed, AT&T's burdens are multiplied by the presence of numerous lawsuits, and the most efficient way of managing those burdens is by establishing a common schedule.

Plaintiff asserts that a shorter discovery schedule is warranted because, in its view, the decisions of the Federal Communications Commission establish that AT&T owes access charges to plaintiff, and thus "the focus of these cases should be on the specific damages to which each Plaintiff is entitled." But discovery is likely to go far beyond issues of damages – which is why plaintiff has asked to exceed the ten-deposition limit. For example, plaintiff's Complaint accuses

- 11 -

AT&T of fraud (Count V) and seeks punitive damages. Those allegations, if pursued, will require discovery.

Also, the FCC orders did not decide whether AT&T is subject to *retroactive* liability for the access charges plaintiff is seeking in this case – yet plaintiff's damage claims are based almost entirely on establishing retroactive liability because AT&T halted the services in question shortly after the FCC orders were issued. In its IP ruling, the FCC stated: "We do not make any determination at this time regarding the appropriateness of retroactive application of this declaratory ruling against AT&T or any other party alleged to owe access charges for past periods." Order, *Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges*, 19 FCC Rcd. 7457, ¶ 23 (2004). The FCC stated that it was "unable to make a blanket determination regarding the equities of permitting retroactive liability. We believe that the equitable inquiry is inherently fact-specific," and pointed out that factors such as "the course of dealings between the parties" could "prove relevant to the analysis." *Id*. Those issues are also likely to involve discovery.

Furthermore, the FCC's decision about AT&T's prepaid calling card services (which itself is on appeal) involved only one version of the service and did not determine the status of other versions that plaintiff is challenging in this case. This too is an open issue, and presumably will entail discovery. In short, this cannot fairly be classified as a "damages only" case.

- 13 -

| | |
|---|---|
| September 7, 2005 | Respectfully submitted, |

| | |
|---|---|
| ___/s/ Eric J. Branfman_____ | ___/s/ David M. Schiffman_____ |
| Eric J. Branfman (D.C. Bar No. 164186) | Michael J. Hunseder (D.C. Bar No. 447260) |
| Joshua M. Bobeck (D.C. Bar No. 443620) | Paul J. Zidlicky (D.C. Bar No. 450196) |
| Anitra D. Goodman (D.C. Bar No. 484434) | Sidley Austin Brown & Wood LLP |
| Swidler Berlin, LLP | 1501 K Street, N.W. |
| 3000 K St. NW, Suite 300 | Washington D.C.  20005 |
| Washington, DC 20007 | Ph. (202) 736-8000 |
| Ph. (202) 424-7553 | Fax (202) 736-8711 |
| Fax (202) 424-7647 | |
| | |
| *Attorneys for Plaintiffs* | David M. Schiffman |
| | Sidley Austin Brown & Wood LLP |
| | Bank One Plaza, 10 South Dearborn |
| | Chicago, Illinois  60603 |
| | Ph. (312) 853-7000 |
| | Fax (312) 853-7036 |
| | |
| | *Attorneys for Defendants* |

- 13 -