IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ITC^DELTACOM COMMUNICATIONS, INC., *et al.* | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | CASE NO. 1:05cv01360 |
| AT&T CORP., *et al.* | ) ) ) |  |
| Defendants. | ) ) |  |

## MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404 and Rule 7 of the local rules for the United States District Court for the District of Columbia, Defendants AT&T Corp. and AT&T Communications, Inc. hereby respectfully move this Court for an order transferring this matter, as well as two other related cases, to the United States District Court for the District of New Jersey.[1]

## INTRODUCTION AND SUMMARY

In each of the three complaints at issue here, AT&T is alleged to have underpaid the charges for services it supposedly used (or should have used) to provide certain types of telephone calls. Each complaint alleges that the underpayments were the result of two separate "schemes" that AT&T "coordinates" from "its corporate headquarters" located in northern New Jersey. Compl. ¶¶ 2, 11. Neither the plaintiffs nor any of their claims have any meaningful

---

[1] The other two cases are *Granite Telecommunications, Inc.* v. *AT&T Corp.*, No. 05-1416 (ESH) and *RCN Telecom Services, Inc.* v. *AT&T Corp.*, No. 05-1432 (ESH). AT&T is filing the exact same motion (apart from changes in the caption and this footnote) in each of the three cases. In addition, two other cases involving similar claims and the same counsel were recently filed. *McClure Tel. Co.* v. *AT&T Corp.*, No. 05-1681 (ESH); *Lexcom Tel. Co.* v. *AT&T Corp.*, No. 05-1740 (ESH). Although AT&T's responses are not yet due in those two cases, AT&T intends to file similar motions to transfer venue in these other cases.

connection whatsoever to the District of Columbia, and the three cases should therefore be transferred to the District of New Jersey, where most of the likely witnesses are located, where AT&T is headquartered, and where six of the plaintiffs in one case also maintain their corporate headquarters.

Most notably, AT&T's investigation has shown that the telephone calls and related services that are the subject matter of these complaints were overwhelmingly made *outside* of the District of Columbia. In fact, two plaintiffs, ITC^DeltaCom ("ITCD") and Business Telecom Inc. ("BTI") (No. 05-1360), apparently do not even provide service in the District. *See* Compl. ¶¶ 7-9 (No. 05-1360). AT&T's records show that these companies have not billed AT&T for service provided in D.C. during the last year. With respect to plaintiff Granite Telecommunications, LLC ("Granite") (No. 05-1416), *far less than 1%* of the services it has recently billed to AT&T were provided within D.C. Indeed, Granite's recent total billings to AT&T for service in D.C. average only about $225 per month – an amount that is less than what Granite billed AT&T in far-flung states like Hawaii, Montana, and Idaho. Further, the so-called "schemes" which form the basis of the three complaints are alleged to have been coordinated from AT&T's corporate headquarters in New Jersey, *not* in D.C. Not surprisingly, then, most of the AT&T witnesses who are likely to testify are found in New Jersey.

Not only does the subject matter of these lawsuits have no connection with D.C., but neither do most of the plaintiffs. In fact, six of the seven plaintiffs in No. 05-1432 (the "RCN plaintiffs") have their principal place of business not in D.C. but in New Jersey, where this action should be transferred. *See* Compl. ¶ 8. The plaintiffs in the other cases similarly have no connection to D.C. Granite, for example, has its headquarters and operations center in Quincy, Massachusetts. Compl. ¶ 7 (No. 05-1416). Neither ITCD nor BTI have operations in D.C.; they

2

are located in Huntsville, Alabama. Compl. ¶¶ 7-9. In fact, the most noticeable connection between these plaintiffs, the lawsuits, and the District is their choice of D.C.-based counsel – but this Court has held that the location of counsel is rarely, if ever, relevant to a determination of the most convenient venue. On these facts, a long line of cases in this Court holds that a plaintiff's choice of venue in D.C. is afforded no deference.

In short, almost none of the "subject matter of the lawsuit is connected" to D.C. and the plaintiffs do not reside here; in these circumstances, where there is a "lack of meaningful ties to this jurisdiction," this Court has consistently heeded the "admonition that courts must be especially cautious in allowing cases to remain in the District of Columbia." *Airport Working Group of Orange Cty.* v. *U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 230-31 (D.D.C. 2002) (quotation omitted) ("*Orange County*"). Consequently, these three cases should be transferred to the District of New Jersey.

**<u>ARGUMENT</u>**

The venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). There can be no valid dispute that this proceeding "might have been brought" in the District of New Jersey, the venue to which AT&T seeks transfer of the case. AT&T has its corporate headquarters there, it is subject to personal jurisdiction in that district, and venue is proper there under 28 U.S.C. § 1391(b) and (c), because both of the AT&T entities "reside" in New Jersey.

When faced with a transfer motion, a district court makes "an individualized, case-by-case consideration of convenience and fairness" and "weigh[s] in the balance a number of case-specific factors," including both "private" and "public" interests. *Stewart Organization* v. *Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). The private interest considerations include:

3

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and the defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Trout Unlimited* v. *U.S. Dep't of Agriculture*, 944 F.Supp. 13, 16 (D.D.C. 1996).  The public considerations include

> (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Id.*

Further, where, as here, there is a "lack of meaningful ties to this jurisdiction, this Court is particularly mindful of the admonition that courts 'must be especially cautious in allowing [cases] to remain in the District of Columbia.'"  *Orange County*, 226 F.Supp.2d at 230-31 (quoting *Trout Unlimited*, 944 F.Supp. at 17).  After applying this admonition and the public and private interest factors to these cases, it is clear that they should be transferred to New Jersey.

I.   **PLAINTIFFS' CHOICE OF FORUM IS NOT ENTITLED TO DEFERENCE.**

Although a plaintiff's choice of forum can often receive great deference, a long line of cases in this Court and elsewhere have determined that "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum."  *Reiffin* v. *Microsoft Corp.*, 104 F.Supp.2d 48, 52 (D.D.C. 2000) (citing cases).[2]  Here, the plaintiff's choice of the District of Columbia should be "accorded little, if any, deference," *DeLoach*, 132 F.Supp.2d at 25, because

---

[2] *See also DeLoach* v. *Phillip Morris Co. Inc.*, 132 F.Supp.2d 22, 24-25 (D.D.C. 2000) ("Numerous cases in this Circuit recognize that [plaintiffs'] choice receives substantially less deference where the plaintiffs . . . neither reside in, nor have any substantial connection to, that forum") (citing cases); *PyroCap Int'l Corp.* v. *Ford Motor Co.*, 259 F.Supp.2d 92, 95 (D.D.C. 2003); *Liban* v. *Churchey Group II, LLC*, 305 F.Supp.2d 136, 141-42 (D.D.C. 2004); *see generally* Wright, Miller, Cooper, 15 Federal Prac. & Proc., § 3848 n.15 (2d Ed. & 2005 Pocket Part) (citing numerous cases).

4

the principal places of business for all of the plaintiffs are located outside the District of Columbia: Granite is headquartered in Massachusetts, ITCD and BTI operate out of Huntsville, Alabama, and the RCN plaintiffs have their principal places of business in either Chicago or in Princeton, NJ.[3]

Further, the gist of each complaint concerns AT&T's failure to pay the allegedly appropriate charges applicable to certain telephone calls, but virtually *none* of the calls that are the subject of the complaints were made or received within the District of Columbia. ITCD and BTI do not even allege that they provide services in D.C. Complaint ¶¶ 7-9 (No. 05-1360). This is confirmed by AT&T's internal review. As described in the attached affidavit of Geri Lancaster, AT&T has investigated its records of the bills that each of the plaintiffs provided AT&T for switched access services, the type of telecommunications service at issue here. Lancaster Aff. ¶¶ 3-5. In the 12-month period from August 2004 to July 2005, neither BTI nor ITCD billed AT&T for any services provided in the District of Columbia. *Id.* ¶ 6 & Exhs. 1 & 2. For these plaintiffs, therefore, *none* of the calls at issue in the lawsuit were provided in the District.

AT&T's investigation also shows that the other plaintiffs have provided only an extremely limited amount of services to AT&T in the District of Columbia. For the 12-month period from August 2004 to July 2005, Granite billed AT&T a total of only $2,670 of usage-

---

[3] One of the RCN plaintiffs, RCN Telecom Services of Washington, D.C., is a District of Columbia Corporation, but its principal place of business is in New Jersey. Compl. ¶¶ 8, 13. The fact that this single plaintiff (out of 11 total plaintiffs in the 3 cases) is incorporated in D.C. is not dispositive of the appropriate venue, particularly given that it (along with 6 other plaintiffs) is headquartered in New Jersey. *See, e.g., Sierra Club* v. *Flowers*, 276 F.Supp.2d 62, 67 (D.D.C. 2003) (transfer from D.C. granted, and "the fact that the parties each have offices in the District of Columbia is not dispositive"); *DeLoach*, 132 F.Supp.2d at 25 (transferring case from D.C. even though 516 class members reside in D.C., because this represents a "relatively tiny number" of the total class).

based charges – a mere $225 per month on average. *Id.* ¶ 7. The amount Granite billed AT&T for services in D.C. represents only *0.14 percent* of Granite's nationwide bills to AT&T. *Id.* To put it another way, Granite's bills to AT&T for service *outside* D.C. are 700 times its bills for service *inside* D.C. Indeed, Granite's bills to AT&T for services provided in D.C. are among the smallest of any location in the country; Granite billed AT&T more for services in states like Hawaii, Montana, and Idaho (and, most significantly, New Jersey) than in D.C. *See id.* ¶ 7 & Exh. 3 (list of billings by state).

Given these facts, the District of Columbia has "no meaningful ties to the controversy and no particular interest in the parties or the subject matter," *Liban*, 305 F.Supp.2d at 142, and is neither a convenient nor appropriate forum for these lawsuits. Indeed, the most obvious connection between the plaintiffs, these lawsuits, and the District of Columbia is that the plaintiffs have retained D.C.-based counsel. While litigating in D.C. may be convenient for counsel, the courts have repeatedly held that the "location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Reiffin*, 104 F.Supp.2d at 52 n.7; *McClamrock* v. *Eli Lilly & Co.*, 267 F.Supp.2d 33, 40-41 (D.D.C. 2003) (citing cases). Because i) the plaintiffs' most significant D.C. contact is irrelevant in determining a convenient venue ii) the plaintiffs do not reside in or conduct significant business with AT&T in D.C. and iii) almost none of the calls that are the subject of this lawsuit were made in D.C., the plaintiffs' choice of D.C. as a forum for this lawsuit deserves no deference.

## II. TRANSFER OF THESE CASES TO NEW JERSEY WOULD PLAINLY BE CONVENIENT FOR THE WITNESSES AND THE PARTIES.

*AT&T's Choice of Forum.*  AT&T requests transfer of this case to New Jersey, which is where its corporate headquarters are located, and, as discussed below, where most of its employees with knowledge of these cases work.  In addition, six of the seven RCN plaintiffs have their principal place of business in New Jersey, and a change of venue from D.C. to New Jersey would be *more* convenient for them as well.[4]  Although Granite does not reside in New Jersey, it does conduct significant business in New Jersey (much more than in D.C.).  *See* Lancaster Aff. Exh. 3 (indicating New Jersey ranks 6th in terms of percentage of Granite's bills to AT&T).  In these circumstances, and "regardless of whether [New Jersey] is the perfect jurisdiction in which the action should proceed, it is far superior to the District of Columbia, which has at best a very attenuated connection to this lawsuit."  *DeLoach*, 132 F.Supp.2d at 26.

*None of The Claims Arise In D.C.*  Transfer of this case to New Jersey is also appropriate because, apart from the miniscule percentage of services provided in D.C., none of the claims arise in D.C.  As discussed above, almost none of the calls that are the subject of the complaint were completed within the District of Columbia.  Further, the gravaman of the allegations in the complaints is that AT&T's failure to pay for access services arose because of two "schemes" related to Internet Protocol calls and prepaid calling card calls.  Compl. ¶ 2.  Although AT&T vigorously denies the allegations that it engaged in any improper conduct, the complaints on their face allege that "AT&T coordinates and controls one overarching position concerning all of these issues *from its corporate headquarters*" (*id.* ¶ 11) (No. 05-1416); *see also* Compl. ¶ 14 (No. 05-1360); Compl. ¶ 19 (No. 05-1432) – in other words, the conduct

---

[4] *See, e.g.*, *Citizen Advocates for Responsible Expansion, Inc.* v. *Dole*, 561 F.Supp. 1238, 1239 (D.D.C. 1983) (the showing necessary to justify a transfer of venue is "substantially diminished where . . . transfer is sought to the forum where plaintiffs reside").

7

complained of is alleged to have occurred in New Jersey, and not in D.C.  Accordingly, for purposes of determining the appropriate venue, virtually none of the plaintiffs' claims should be deemed to arise in D.C., which makes a transfer of venue to New Jersey appropriate.

*Convenience of the Parties*.  Transfer to New Jersey is also appropriate because that venue is certainly more convenient for AT&T and for six RCN plaintiffs, all of which are headquartered there.  Further, New Jersey is likely more convenient than D.C. for Granite, which is headquartered in a Boston suburb.  For ITCD and BTI, New Jersey is not materially less convenient than D.C.  Transferring the case to New Jersey would impose no additional burden on these plaintiffs, which were willing to file their complaints in a venue that was located hundreds of miles away from their corporate headquarters and, in the case of BTI and ITCD, outside their service territory.

*Witness Availability For Trial*.  Transfer is also appropriate for the convenience of the witnesses and to ensure that it is more likely that witnesses are available for trial.  When AT&T provides its initial disclosures, it will identify approximately eleven witnesses that it may use to support its claims or defenses, and nearly all of these individuals work in New Jersey.[5]  Furthermore, any other AT&T witnesses are also likely to be in New Jersey where AT&T is headquartered.  The same also is likely true of RCN's employees who work at the corporate headquarters in Princeton, NJ.  If the case is transferred, these New Jersey-based witnesses will be within subpoena range for trial.  That would not true of a trial in D.C.  So far as AT&T is aware, not a single likely witness in any of these cases is in the Washington, D.C., area.

---

[5] Attached is the Affidavit of Geraldine Mack, which discusses the list of persons that AT&T disclosed in other cases that involve similar allegations.  Nearly all of these individuals either work for AT&T in New Jersey or are retired and live in New Jersey. Mack Aff. ¶¶ 4-5.  AT&T intends to disclose the same (or a very similar) list of persons in this case.

### III. TRANSFER OF THESE CASES WOULD ALSO SERVE THE PUBLIC INTEREST OF THE DISTRICT COURTS.

The public interest factors applicable under § 1404, *see supra*, also point to New Jersey as a far more appropriate forum than D.C.

*Governing Laws*.  Transfer is appropriate because the District Court in New Jersey is as familiar as this Court with the governing law in these cases.  Each complaint here alleges five counts, including breach of federal tariffs and four other claims based on a variety of state laws, including breach of tariffs in multiple states as well as common law breach of contract, unjust enrichment, and fraud claims.  Compl. ¶¶ 40-76.  As to the federal claims, New Jersey district courts are equally as competent as this Court in deciding those claims.  *See Southern Utah Wilderness Alliance* v. *Norton*, 315 F.Supp.2d 82, 89 & n.2 (D.D.C. 2004); *In re Korean Air Lines*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (courts follow "the principle that the transferee federal court is competent to decide federal issues correctly").  As to the state law claims, the law of the District of Columbia will likely apply only to those services provided under a D.C. intrastate tariff, which, as explained above, is likely to be extremely small.  And although a full choice of law analysis to each of the state law claims is premature, New Jersey state law may apply to some of the plaintiffs' claims, given that AT&T and six of the RCN plaintiffs are headquartered there and, as discussed above, many of the witnesses work there.  Accordingly, the New Jersey District Court would likely be more familiar with the governing laws than this Court.

Further, the fact that decisions of the FCC, a federal agency in D.C., may relate to some of the plaintiffs' claims does not dictate that the public interest favors venue in D.C.  As this Court has previously recognized, venue is not appropriate in D.C. merely because the lawsuit

9

concerns an area that is regulated by one of the many D.C.-based federal agencies.[6] Were it otherwise, any case involving an agency order might be filed in or transferred to this Court. *See DeLoach*, 132 F.Supp.2d at 25. (transfer appropriate where plaintiffs had not "demonstrated that the District of Columbia has a stronger interest in the outcome of this lawsuit than it would have in any other complex litigation which in some manner implicates a federal regulatory scheme").

*Local Interest.* Under the public interest factor that examines the local interest in deciding local controversies at home, it is clear that the District of Columbia has no interest at all in resolving a dispute between telecommunications carriers based in Massachusetts, Illinois, Alabama, and New Jersey. By contrast, the plaintiffs – 6 of which are headquartered in New Jersey – have alleged that a fraud has been committed by a New Jersey-based corporation and its employees (which largely work in New Jersey), and the New Jersey courts have an interest in determining the validity of these allegations. Accordingly, the New Jersey courts have a greater interest in this case than do the courts in the District of Columbia.

---

[6] *See, e.g.*, *DeLoach*, 132 F.Supp.2d at 25 (transfer from D.C. granted where "the only real connection this lawsuit has to the District of Columbia is that a federal agency headquartered here (USDA) is charged with generally regulating" a process that the defendants were alleged to be undermining; this was insufficient because plaintiffs "have not indicated that the USDA or any of its employees have a significant, day-to-day, role in observing [the process]"); *Shawnee Tribe* v. *U.S.*, 298 F.Supp.2d 21, 25-26 (D.D.C. 2002) (the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the appropriate venue).

**CONCLUSION**

For the foregoing reasons and pursuant to 28 U.S.C. § 1404, the Court should transfer Case No. 05-1416, Case No. 05-1360, and Case No. 05-1432, to the United States District Court for the District of New Jersey.

Respectfully Submitted,

September 12, 2005                    Respectfully submitted,

/s/ Michael J. Hunseder

_____
David M. Schiffman
(admitted *pro hac vice*)
Sidley Austin Brown & Wood, LLP
Bank One Plaza
10 South Dearborn
Chicago, Illinois 60603
Phone:  (312) 853-7782
Fax:     (312) 853-7036

Paul M. Zidlicky (DC Bar No. #450196)
Michael J. Hunseder (DC Bar No. #447260)
Brendan J. McMurrer (DC Bar No. #493424)
Sidley Austin Brown & Wood, LLP
1501 K Street, N.W.
Washington, DC  20005
Phone:  (202) 736-8000
Fax:     (202) 736-8711