## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                         |     |                               |
|-----------------------------------------|-----|-------------------------------|
|                                         | )   |                               |
| IN RE:                                  | )   |                               |
| AT&T ACCESS CHARGE LITIGATION           | )   |                               |
|                                         | )   | Civil Action No. 05-1360      |
|                                         | )   |                               |
|                                         | )   |                               |
| THIS DOCUMENT RELATES TO:               | )   |                               |
| ALL ACTIONS                             | )   |                               |
|                                         | )   |                               |

### DEFENDANTS' MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), Local Rule 7, and the Court's Case Management Order dated September 23, 2005, Defendants AT&T Corp. and AT&T Communications, Inc. hereby respectfully move this Court for an order transferring these cases to the United States District Court for the District of New Jersey.[1]

### INTRODUCTION AND SUMMARY

In each of the seven complaints at issue here, AT&T is alleged to have underpaid the charges for services it supposedly used (or should have used) to provide certain types of telephone calls. Each complaint alleges that the underpayments were the result of two separate "schemes" that AT&T "coordinates" from "its corporate headquarters" located in northern New Jersey. *See, e.g.*, Compl. ¶¶ 2, 14 (No. 05-1360). Neither the plaintiffs nor any of their claims have any meaningful connection whatsoever to the District of Columbia, and the seven cases should therefore be transferred to the District of New Jersey, where most of the likely witnesses

---

[1] On September 12, 2005, AT&T filed motions to transfer in three of the matters that the Court subsequently consolidated for pretrial purposes: *Granite Telecomm.* v. *AT&T Corp.*, No 05-1416 (Docket No. 12); *RCN Telecom Services* v. *AT&T Corp.*, No. 05-1432 (Docket No. 12) and *ITC DeltaCom Comm.* v. *AT&T Corp.*, No. 05-1360 (Docket No. 12). Pursuant to the Court's Case Management Order, AT&T is separately filing a short motion to withdraw the motion to transfer in these three cases.

are located, where AT&T is headquartered, and where six of the plaintiffs in one case also maintain their corporate headquarters.

The plaintiffs in these cases are as follows:

| Case No. | Plaintiffs | Headquarters location |
|---|---|---|
| 05-1360 | ITC^DeltaCom, Inc. ("ITCD") and Business Telecom, Inc. ("BTI") | Alabama |
| 05-1416 | Granite Telecommunications, LLC ("Granite") | Massachusetts |
| 05-1432 | RCN Telecom Services, Inc., *et al.* ("RCN") | New Jersey (6 plaintiffs) Illinois (1 plaintiff) |
| 05-1681 | McClure Telephone Co. ("McClure") | Ohio |
| 05-1740 | Lexcom Telephone Co. ("Lexcom") | North Carolina |
| 05-1785 | Supra Telecommunications and Information Systems, Inc. ("Supra") | Florida |
| 05-1858 | Prairie Grove Telephone Co. ("Prairie Grove") | Arkansas |

Not only are the plaintiffs located outside the District, but the telephone calls and the access services provided in connection with such calls, which are the subject matter of these complaints, were overwhelmingly made ***outside*** of the District of Columbia. In fact, the plaintiffs in five of the cases (*ITCD/BTI*, *McClure*, *Lexcom, Supra,* and *Prairie Grove*) do not allege that they provide *any* service in the District. *See* Compl. ¶¶ 7-9 (No. 05-1360); Compl. ¶ 7 (No. 05-1681); Compl. ¶ 7 (No. 05-1740); Compl. ¶ 7 (No. 05-1785); Compl. ¶ 7 (05-1858). AT&T's records show that these companies have not billed AT&T for service provided in D.C. during the last year. A sixth plaintiff, Granite, provides only a minuscule amount of service here. Its billings to AT&T average only about $225 per month and represent *far less than 1%* of the

services it provides to AT&T – an amount that is less than what Granite billed AT&T in far-flung states like Hawaii, Montana, and Idaho.  Finally, in the *RCN* case, one of the seven plaintiffs is located in Illinois and the other six have their headquarters in New Jersey – the state where these cases should be transferred.

Further, the so-called "schemes" which form the basis of the seven complaints are alleged to have been coordinated from AT&T's corporate headquarters in New Jersey, *not* in D.C.  Not surprisingly, then, most of the AT&T witnesses who are likely to testify are found in New Jersey.

The only real connection between these plaintiffs, the lawsuits, and the District of Columbia, is their choice of D.C.-based counsel – but this Court has held that the location of counsel is rarely, if ever, relevant to a determination of the most convenient venue.  On these facts, a long line of cases in this Court holds that a plaintiff's choice of venue in D.C. is afforded no deference.

In short, almost none of the "subject matter of the lawsuit is connected" to D.C. and the plaintiffs do not reside here; in these circumstances, where there is a "lack of meaningful ties to this jurisdiction," this Court has consistently heeded the "admonition that courts must be especially cautious in allowing cases to remain in the District of Columbia."  *Airport Working Group of Orange County.* v. *U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 230-31 (D.D.C. 2002) (quotation omitted) ("*Orange County*").  Consequently, these seven cases should be transferred to the District of New Jersey.

## ARGUMENT

The change of venue statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  There can be no valid dispute

that these proceedings "might have been brought" in the District of New Jersey, the venue to which AT&T seeks transfer of the cases. AT&T has its corporate headquarters there, it is subject to personal jurisdiction in that district, and venue is proper there under 28 U.S.C. § 1391(b) and (c), because both of the AT&T entities "reside" in New Jersey.

When faced with a transfer motion, a district court makes "an individualized, case-by-case consideration of convenience and fairness" and "weigh[s] in the balance a number of case-specific factors," including both "private" and "public" interests. *Stewart Org.* v. *Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). The private interest considerations include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and the defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Trout Unlimited* v. *U.S. Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996). The public considerations include:

> (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Id.*

Further, where, as here, there is a "lack of meaningful ties to this jurisdiction, this Court is particularly mindful of the admonition that courts 'must be especially cautious in allowing [cases] to remain in the District of Columbia.'" *Orange County*, 226 F. Supp. 2d at 230-31 (quoting *Trout Unlimited*, 944 F. Supp. at 17). After applying this admonition and the public and private interest factors to these cases, it is clear that they should be transferred to the District of New Jersey.

## I.    PLAINTIFFS' CHOICE OF FORUM IS NOT ENTITLED TO DEFERENCE.

Although a plaintiff's choice of forum can often receive great deference, a long line of cases in this Court and elsewhere have determined that "substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum." *Reiffin* v. *Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000) (citing cases).[2]  Here, the plaintiff's choice of the District of Columbia should be "accorded little, if any, deference," *DeLoach*, 132 F. Supp. 2d at 25, because the principal place of business for every single plaintiff is located outside the District of Columbia.  Only one of the plaintiffs, RCN Telecom Services of Washington, D.C., is a D.C. Corporation, but its principal place of business is in *New Jersey*.  Compl. ¶¶ 8, 13 (No. 05-1432). This nominal connection to the District is not a basis for keeping the case here.  *See, e.g.*, *Sierra Club* v. *Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C. 2003) (transfer from D.C. granted, and "the fact that the parties each have offices in the District of Columbia is not dispositive"); *DeLoach*, 132 F. Supp. 2d at 25 (transferring case from D.C. even though 516 class members reside in D.C., because this represents a "relatively tiny number" of the total class).

Further, the gist of each complaint concerns AT&T's failure to pay the allegedly appropriate charges applicable to certain telephone calls, but virtually ***none*** of the calls that are the subject of the complaints were received within the District of Columbia.  As stated above, the plaintiffs in the *ITCD/BTI*, *McClure*, *Lexcom, Supra,* and *Prairie Grove* cases do not even allege that they provide services in D.C.  This is confirmed by AT&T's internal review.  As described

---

[2] *See also DeLoach* v. *Phillip Morris Co.*, 132 F. Supp. 2d 22, 24-25 (D.D.C. 2000) ("Numerous cases in this Circuit recognize that [plaintiffs'] choice receives substantially less deference where the plaintiffs . . . neither reside in, nor have any substantial connection to, that forum") (citing cases); *PyroCap Int'l Corp.* v. *Ford Motor Co.*, 259 F. Supp. 2d 92, 95 (D.D.C. 2003); *Liban* v. *Churchey Group II, LLC*, 305 F. Supp. 2d 136, 141-42 (D.D.C. 2004); *see generally* Wright, Miller, Cooper, 15 Fed. Prac. & Proc., § 3848 n.15 (2d Ed. & 2005 Pocket Part) (citing numerous cases).

in the attached Declaration of Geri Lancaster, AT&T has investigated its records of the bills that each of the plaintiffs provided AT&T for switched access services, the type of telecommunications service at issue here.  Lancaster Dec. ¶¶ 3-5.  In the 12-month period from August 2004 through July 2005, ITCD, BTI, McClure, Lexcom, Supra, and Prairie Grove did not bill AT&T for any services provided in the District of Columbia.  *Id.* ¶ 6.  For these plaintiffs, therefore, *none* of the calls at issue in these lawsuits were within the District.

AT&T's investigation also shows that the other plaintiffs have provided only an extremely limited amount of services to AT&T in the District of Columbia.  For the 12-month period from August 2004 through July 2005, Granite billed AT&T a total of only $2,670 of usage-based charges – a mere $225 per month on average.  *Id.* ¶ 7 & Exh. 1.  The amount Granite billed AT&T for services in D.C. represents only *0.14 percent* of Granite's nationwide bills to AT&T.  *Id.*  To put it another way, Granite's bills to AT&T for service *outside* D.C. are 700 times its bills for service *inside* D.C.  Indeed, Granite's bills to AT&T for services provided in D.C. are among the smallest of any location in the country; Granite billed AT&T more for services in states such as Hawaii, Montana, and Idaho (and, most significantly, New Jersey) than in D.C.  *See* Lancaster Dec. Exh. 1 (list of billings by state).

Given these facts, the District of Columbia has "no meaningful ties to the controversy and no particular interest in the parties or the subject matter," *Liban*, 305 F. Supp. 2d at 142, and is neither a convenient nor appropriate forum for these lawsuits.  Indeed, the most obvious connection between the plaintiffs, these lawsuits, and the District of Columbia is that the plaintiffs have retained D.C.-based counsel.  While litigating in D.C. may be convenient for counsel, the courts have repeatedly held that the "location of counsel carries little, if any, weight in an analysis under § 1404(a)."  *Reiffin*, 104 F. Supp. 2d at 52 n.7; *McClamrock* v. *Eli Lilly &*

*Co.*, 267 F. Supp. 2d 33, 40-41 (D.D.C. 2003) (citing cases).  Because i) the plaintiffs' most significant D.C. contact is irrelevant in determining a convenient venue, ii) the plaintiffs do not reside in or conduct significant business with AT&T in D.C., and iii) almost none of the calls that are the subject of these lawsuits were made within D.C., the plaintiffs' choice of D.C. as a forum for these lawsuits deserves no deference.

**II.    TRANSFER OF THESE CASES TO NEW JERSEY PLAINLY WOULD BE CONVENIENT FOR THE WITNESSES AND THE PARTIES.**

*AT&T's Choice of Forum.*  AT&T requests transfer of these cases to New Jersey, which is where its corporate headquarters are located, and, as discussed below, where most of its employees with knowledge of these cases work.  In addition, six of the seven RCN plaintiffs have their principal place of business in New Jersey, and a change of venue from D.C. to New Jersey would be *more* convenient for them as well.[3]  Additionally, although Granite does not reside in New Jersey, it does conduct significant business in New Jersey (much more than in D.C.).  *See* Lancaster Dec. Exh. 1 (indicating New Jersey ranks 6th in terms of percentage of Granite's bills to AT&T).  In these circumstances, and "regardless of whether [New Jersey] is the perfect jurisdiction in which the action should proceed, it is far superior to the District of Columbia, which has at best a very attenuated connection to this lawsuit."  *DeLoach*, 132 F. Supp. 2d at 26.

*None of The Claims Arise In D.C.*  Transfer of these cases to New Jersey also is appropriate because, apart from the miniscule percentage of services provided in D.C., none of the claims arise in D.C.  As discussed above, almost none of the calls that are the subject of the complaints were completed within the District of Columbia.  Further, the gravaman of the

---

[3] *See, e.g.*, *Citizen Advocates for Responsible Expansion, Inc.* v. *Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (the showing necessary to justify a transfer of venue is "substantially diminished where . . . transfer is sought to the forum where plaintiffs reside").

allegations in the complaints is that AT&T's failure to pay for access services arose because of two "schemes" related to Internet Protocol calls and prepaid calling card calls. *See* Compls. ¶ 2. Although AT&T vigorously denies the allegations that it engaged in any improper conduct, the complaints on their face allege that "AT&T coordinates and controls one overarching position concerning all of these issues *from its corporate headquarters*" (Compl. ¶ 11) (No. 05-1416); *see also, e.g.,* Compl. ¶ 14 (No. 05-1360); Compl. ¶ 19 (No. 05-1432) – in other words, the conduct complained of is alleged to have occurred in New Jersey, *not* in D.C. Accordingly, for purposes of determining the appropriate venue, virtually none of the plaintiffs' claims should be deemed to arise in D.C., which makes a transfer of venue to the District of New Jersey appropriate.

**Convenience of the Parties**. Transfer to New Jersey also is appropriate because that venue certainly is more convenient for AT&T and for six RCN plaintiffs, all of which are headquartered there. Transferring the case to New Jersey would impose no additional burden on the other plaintiffs, which were willing to file their complaints in a venue that was located hundreds of miles away from their corporate headquarters and (for most of them) outside of their service territories.

**Witness Availability For Trial**. Transfer also is appropriate for the convenience of the witnesses and to ensure that it is more likely that witnesses are available for trial. AT&T's initial disclosures identify eleven witnesses that it may use to support its claims or defenses, and nearly all of these individuals either work for AT&T in New Jersey or are retired and live in New Jersey.[4] Furthermore, any other AT&T witnesses are likely to be in New Jersey where AT&T is headquartered. The same likely is true of RCN's employees who work at the corporate

---

[4] Attached is the Declaration of Geraldine Mack, which discusses the list of persons that AT&T identified in its initial disclosures for three of the above cases (05-1360; 05-1416; 05-1432). Similar disclosures will be filed in the other four cases. Nearly all of these individuals either work for AT&T in New Jersey or are retired and live in New Jersey. Mack Dec. ¶¶ 4-5.

headquarters in Princeton, New Jersey. If the case is transferred, these New Jersey-based witnesses will be within subpoena range for trial. That would not be true of a trial in D.C. So far as AT&T is aware, not a single likely witness in any of these cases is in the Washington, D.C., area.

## III.    TRANSFER OF THESE CASES ALSO WOULD SERVE THE PUBLIC INTEREST OF THE DISTRICT COURTS.

The public interest factors applicable under § 1404(a), *see supra*, also point to New Jersey as a far more appropriate forum than D.C.

*Governing Laws*. Transfer is appropriate because the District Court in New Jersey is as familiar as this Court with the governing law in these cases. Each complaint here alleges four or five counts, including breach of federal tariffs and other claims based on a variety of state laws, including breach of tariffs in multiple states, as well as common law breach of contract, unjust enrichment, unfair and deceptive trade practices, and fraud claims. *See, e.g.*, Compl. ¶¶ 40-76 (No. 05-1416); Compl. ¶¶ 41-75 (No. 05-1785). As to the federal claims, New Jersey district courts are equally as competent as this Court in deciding those claims. *See Southern Utah Wilderness Alliance* v. *Norton*, 315 F. Supp. 2d 82, 89 & n.2 (D.D.C. 2004); *In re Korean Air Lines*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (courts follow "the principle that the transferee federal court is competent to decide federal issues correctly"). As to the state law claims, the law of the District of Columbia likely will apply only to those services provided under a D.C. intrastate tariff, which, as explained above, is likely to be extremely small. And although a full choice of law analysis for each of the state law claims is premature, New Jersey state law may apply to some of the plaintiffs' claims, given that AT&T and six of the RCN plaintiffs are headquartered there and, as discussed above, many of the witnesses work there. Accordingly,

the New Jersey District Court likely would be more familiar with the governing laws than this Court.

Further, the fact that decisions of the FCC, a federal agency in D.C., may relate to some of the plaintiffs' claims does not dictate that the public interest favors venue in D.C. As this Court has previously recognized, venue is not appropriate in D.C. merely because the lawsuit concerns an area that is regulated by one of the many D.C.-based federal agencies.[5] Were it otherwise, any case involving an agency order might be filed in or transferred to this Court. *See DeLoach*, 132 F. Supp. 2d at 25. (transfer appropriate where plaintiffs had not "demonstrated that the District of Columbia has a stronger interest in the outcome of this lawsuit than it would have in any other complex litigation which in some manner implicates a federal regulatory scheme").

*Local Interest*.   Under the public interest factor that examines the local interest in deciding local controversies at home, it is clear that the District of Columbia has no interest at all in resolving a dispute between telecommunications carriers based in Massachusetts, Illinois, Alabama, Ohio, North Carolina, Florida, Arkansas, and New Jersey. By contrast, the plaintiffs – 6 of which are headquartered in New Jersey – have alleged that a fraud has been committed by a New Jersey-based corporation and its employees (who largely work in New Jersey), and the New Jersey courts have an interest in determining the validity of these allegations. Accordingly, the

---

[5] *See, e.g.*, *DeLoach*, 132 F. Supp. 2d at 25 (transfer from D.C. granted where "the only real connection this lawsuit has to the District of Columbia is that a federal agency headquartered here (USDA) is charged with generally regulating" a process that the defendants were alleged to be undermining; this was insufficient because plaintiffs "have not indicated that the USDA or any of its employees have a significant, day-to-day, role in observing [the process]"); *Shawnee Tribe* v. *United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002) (the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the appropriate venue).

New Jersey courts have a greater interest in this case than do the courts in the District of Columbia.

## CONCLUSION

For the foregoing reasons and pursuant to 28 U.S.C. § 1404(a), the Court should transfer Case No. 05-1416, Case No. 05-1360, Case No. 05-1432, Case No. 05-1681, Case No. 05-1740, Case No. 05-1785, and Case No. 05-1858 to the United States District Court for the District of New Jersey.

Dated:  September 30, 2005                    Respectfully submitted,

                                              /s/ Michael J. Hunseder
                                              _____
                                              David M. Schiffman
                                              (admitted *pro hac vice*)
                                              Sidley Austin Brown & Wood, LLP
                                              Bank One Plaza
                                              10 South Dearborn
                                              Chicago, Illinois 60603
                                              Phone:  (312) 853-7782
                                              Fax:      (312) 853-7036

                                              Paul M. Zidlicky (DC Bar No. #450196)
                                              Michael J. Hunseder (DC Bar No. #447260)
                                              Brendan J. McMurrer (DC Bar No. #493424)
                                              Sidley Austin Brown & Wood, LLP
                                              1501 K Street, N.W.
                                              Washington, DC  20005
                                              Phone:  (202) 736-8000
                                              Fax:      (202) 736-8711

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br>AT&T ACCESS CHARGE LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | )<br>)<br>)<br>)    Civil Action No. 05-1360<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] ORDER

UPON CONSIDERATION of the Defendants' Motion To Transfer Venue (filed Sept. 30, 2005), the Plaintiffs' Opposition, and the Defendants' Reply,

**IT IS HEREBY ORDERED** as follows:

1.    The Defendants' Motion is **GRANTED**;

2.    Based on the convenience of the parties and witnesses and in the interest of justice, the Coordinated Actions (Nos. 05-1360; 05-1416; 05-1432; 05-1681; 05-1740; 05-1785; and 05-1858) are hereby transferred, pursuant to 28 U.S.C. § 1404, to the United States District Court for the District of New Jersey;

3.    If any new action is filed in this Court that arises out of the same operative facts as alleged in the Coordinated Actions, the new action shall also be transferred to the District Court for the District Court of New Jersey.

_____
**ELLEN SEGAL HUVELLE**
**United States District Judge**

_____, 2005

DC1 798795v.3