**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: ) | |
| AT&T ACCESS CHARGE LITIGATION ) | |
| ) | Civil Action No. 05-1360 |
| THIS DOCUMENT RELATES TO: ) | |
| ALL ACTIONS ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), Local Rule 7, and the Court's Case Management Order dated September 23, 2005, Defendants AT&T Corp., *et al*., respectfully submit this reply brief in support of their motion ("AT&T Mot.") for an order transferring these cases to the United States District Court for the District of New Jersey.

### INTRODUCTION AND SUMMARY

Despite the plaintiffs' 99-page response ("Opp."), the undisputed facts supporting AT&T's motion to transfer are quite simple and overwhelmingly demonstrate that these cases have no meaningful connection to the District of Columbia and should be transferred. Plaintiffs do not dispute that:

1) not a *single* party in the cases has its principal place of business in D.C.;

2) most of the "*plaintiffs do not offer service in this district*" (Opp. at 7) and that, with respect to the specific type of services at issue in this case, the plaintiffs collectively provided AT&T with a *de minimis* amount of services in the District; and

3) the District of Columbia and its businesses and residents – apart from plaintiffs' counsel – have no interest in resolving a dispute between out-of-state telephone companies regarding wholesale telecommunications services that were provided almost exclusively outside the District.

The plaintiffs' essential argument against a transfer from D.C. is that the Court must defer to the plaintiffs' "privilege" of choosing this district, which they frankly have admitted was chosen strictly because this district is most convenient to plaintiffs' counsel. The convenience of the plaintiffs' counsel is a patently insufficient reason for this Court to retain a dispute between out-of-state companies. Indeed, the plaintiffs' counsel has conceded that, under this Court's precedents, the convenience of counsel "does not mean anything." Now, the plaintiffs' brief attaches "important" significance to the convenience of counsel, but all that it has managed to cite for that claim are two cases from a different court – cases which are inconsistent with this Court's holdings and other decisions from that court and which, in all events, hold merely that convenience to counsel can in some cases be given at most "slight weight." Contrary to the claims in the plaintiffs' brief, this Court correctly stated the law at the initial scheduling conference: convenience of counsel is "not the decisive thing. The question is whether this jurisdiction has some substantial interest in the matter."

On that critical question, the subject matter of the complaints has no significant connection to D.C., and this Court is therefore not required to defer to the plaintiffs' choice of forum. The plaintiffs have struggled mightily to connect these cases in some way to D.C., but most of their purportedly "meaningful" ties are makeweights that exist merely because these cases are related to FCC proceedings. This Court has held that connections to agency proceedings must be "significant," with agency officials having a "day-to-day" role in the subject matter of the case. That is simply not true here.

The plaintiffs in this case could have filed suit in their home forum, where their choice would have been afforded more deference than in this Court. But they chose to bring suit in a forum that is distant for all interested parties (except the plaintiffs' counsel), presumably because

they are able to share the costs of litigation by joining with other plaintiffs. In these circumstances, there will not be one single district that is perfectly convenient for all parties. Thus, while New Jersey may not be a perfect forum, it allows the plaintiffs to continue to share costs of litigation, and it is certainly more convenient and has a much greater connection to the lawsuit than D.C. For these reasons, these cases should be transferred to New Jersey.

## ARGUMENT

**I.   THERE ARE NO MEANINGFUL TIES BETWEEN THIS DISTRICT AND THESE CASES, AND PLAINTIFFS' CHOICE OF FORUM IS NOT ENTITLED TO DEFERENCE.**

This case simply has no significant connection to D.C. Most important, the plaintiffs do not reside in the District of Columbia, and the law in this Court and elsewhere unambiguously provides that "*substantially less deference* [to the plaintiff's chosen venue] is warranted when the forum preferred by the plaintiff is not his home forum." *Reiffin* v. *Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000) (emphasis added) (citing numerous cases).[1] Indeed, most of the plaintiffs conduct no business of *any* kind here. *See* AT&T Mot. at 2.

The plaintiffs do not dispute these critical facts. Instead, they assert that "great deference" to their choice of forum is nonetheless required because "there are numerous meaningful ties" between this district and the subject matter of these cases. Opp. at 5. As a matter of law, the plaintiffs are incorrect, because the cases are clear that a plaintiff's choice of forum receives "great" deference only when it resides there *and* when the claims in the lawsuit

---

[1] The plaintiffs baldly assert that "[t]his is simply not the law" (Opp. at 5), but they cite no cases to the contrary. AT&T's motion sets forth significant authority for the proposition that a court need not provide significant deference to a plaintiff's choice of forum where it chooses to litigate outside of its home state. AT&T Mot. at 5 n.2; *see also Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 255-56 (1981) ("a foreign plaintiff's choice deserves less deference"); *Weinberger* v. *Tucker*, 2005 WL 2402887 *4 (D.D.C. 2005); *California Farm Bur. Fed.* v. *Badgley*, 2005 WL 1532718 *2 (D.D.C. 2005); *Pyrocap Int'l Corp.* v. *Ford Motor Co.*, 259 F. Supp. 2d 92, 95 (D.D.C. 2003).

3

arose in that forum; such cases are typically transferred only if "the balance of convenience is strongly in favor of the defendants." *Trout Unlimited* v. *U.S. Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996). However, for these purposes, this legal issue is not dispositive, because none of the supposedly meaningful ties upon which the plaintiffs rely in fact establishes any legally relevant connection to this district. Accordingly, the plaintiffs' choice of forum is not entitled to any deference.[2]

      **A)    AT&T's FCC Filings Do Not Create A Significant Connection Between This Case And The District of Columbia.**

The plaintiffs first assert that there is a "meaningful" tie to D.C. because their complaints are said to be "heavily dependent" on allegations that AT&T made fraudulent misrepresentations in this district, specifically in FCC regulatory filings. Opp. at 5-6. As an initial matter, there is no truth either to the substance of the allegations or to the plaintiffs' statements that their complaints are "heavily dependent" on such allegations.[3] Even if those claims were accurate,

---

[2] Even if D.C. had a substantial interest in the subject matter of these suits, the case law discussed above clearly provides that "substantially" less deference is warranted when the plaintiffs do not reside in the forum. In such cases, while some degree of deference is afforded to the plaintiff's choice, the Court may still decide to transfer the case if, on balance, the other private and public factors demonstrate that another forum would be more convenient – which, as discussed below and in AT&T's motion, is precisely the case here.

[3] First, the filings themselves do not remotely establish fraud. AT&T made these filings, even though it believed its services were fully consistent with the law, to describe its services to the FCC so that the FCC would issue a declaratory ruling that AT&T's treatment of its services was correct. Given that AT&T's clear purpose was to clarify any regulatory uncertainty, the view that these filings misrepresented AT&T's services is nonsense.

  Second, no reasonable person, after a fair reading of the plaintiffs' complaints, would conclude that a "key underpinning" (Opp. at 6) of the complaints concerns the "truth or falsity" of AT&T's FCC filings. These filings are mentioned only in passing (*e.g.*, Compl. ¶ 44), and it is clear from the very first paragraph of the complaints that this case is not an inquiry into the veracity of FCC filings but rather "involves AT&T's failure to pay" allegedly required "charges for its use of Plaintiff's network facilities." Compl. ¶ 1 (No. 05-1360). If the plaintiffs did intend to make these regulatory pleadings a "key underpinning" of their complaints, then they have violated their duty under Rule 9(b) to plead fraud with particularity, because the complaints simply do not rely "heavily" on those pleadings or specify how the plaintiffs were defrauded.

4

however, that fact establishes no meaningful connection to D.C. under this Court's precedents. The fact that AT&T filed regulatory pleadings in D.C., where the FCC is located and where such filings must by law be made, has no practical effect on the lawsuits. In fact, the statements in these FCC filings were made and signed by "AT&T Corp." and represent the position of its corporate headquarters, which is in New Jersey. *See* Opp. Exh. 6A, p.1; *cf.* Compl. ¶ 14 (No. 05-1360) (alleging that that "AT&T coordinates and controls one overarching position concerning all these issues from its corporate headquarters"). Further, as AT&T stated in its motion (at 9) and as the plaintiffs do not dispute, AT&T is not aware of a single AT&T witness that resides in the D.C. area, despite the fact that these filings occurred in D.C. No party contemplates at this time that FCC officials will be required to testify in this case, and neither the pre-trial nor trial proceedings would be at all affected if this suit proceeds in a district outside of where the FCC is headquartered.

Because the location of the FCC filings has no practical effect on these cases, the plaintiffs' argument that these FCC filings create a "meaningful" connection to D.C., reduces to an assertion that D.C. is a convenient forum simply because the FCC held two proceedings that relate to this case. This Court, however, has consistently refused to retain cases in this district merely because they relate to proceedings conducted by one of the hundreds of regulatory agencies located in Washington, D.C.[4]

The plaintiffs do not seriously dispute this proposition, but they claim that a case should not be transferred from D.C. where it "has some national significance and the plaintiffs' counts

---

[4] AT&T Mot. at 10; *see Airport Working Group of Orange County* v. *U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 230-31 (D.D.C. 2002) (agency proceedings "too attenuated to create a meaningful factual nexus" to D.C.); *DeLoach* v. *Phillip Morris Co.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000); *Shawnee Tribe* v. *United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002); *Sierra Club* v. *Flowers*, 276 F. Supp. 2d 62, 67-68 (D.D.C. 2003).

5

focus on interpretation of federal statutes and federal government officials in the District of Columbia were involved." Opp. at 2. They cite two cases to support this claim, but a review of the facts of those cases demonstrates that the lawsuits at issue here are not remotely comparable.[5]

First and foremost, in those two cases, a significant number of the plaintiffs resided or had offices in D.C. In *Wilderness Soc'y*, "[f]our of the [eight] plaintiffs are headquartered in D.C. and two others have offices here." 104 F. Supp. 2d at 14. In *Greater Yellowstone Coal.*, "two of the five plaintiffs" had "offices in the District of Columbia." 180 F. Supp. 2d at 129. Both decisions, in denying transfer, expressly "distinguish[ed] other cases in which judges transferred cases out of the District of Columbia" because in those other cases – as here – "none of the plaintiffs resided in the District of Columbia." *Id.*; *see Wilderness Soc'y*, 104 F. Supp. 2d at 14. For this reason alone, these cases are not applicable precedents here.

Further, in both of the cases cited by plaintiffs, the defendants were not private corporations with headquarters in another state (like AT&T), but were federal agencies headquartered in D.C. *Id*. at 14 (Department of Interior); *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 126 (U.S. Forest Service). In those circumstances, even though the subject matters of the disputes were located in remote states, it was convenient to retain the case in D.C.

Second, contrary to the plaintiffs' claims (Opp. at 1), this case does not remotely present the level of "national significance" at issue in the cases cited by the plaintiffs. In *Wilderness Soc'y*, for example, the case involved the "*National* Petroleum Reserve" ("NPR"), which was located in Alaska but which the Court described as a "national resource" that Congress determined should be regulated "in a manner consistent with the total energy needs of the

---

[5] Opp. at 2, 13 (citing *Wilderness Soc'y* v. *Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) and *Greater Yellowstone Coal.* v. *Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001)).

*Nation.*" 104 F. Supp. 2d at 13 (emphases added).[6]  By contrast, these cases narrowly concern only the access services that plaintiffs provided within their service territories, which are plainly not "national resources."  As AT&T explained and plaintiffs do not dispute, those service territories are, with very insignificant exceptions, located *outside* the District.  There is nothing "national" about, for example, plaintiff Lexcom's access services, which are offered exclusively in Davidson County, North Carolina.

Third, with respect to involvement of D.C.-based agency officials, the cases are clear that "mere involvement" of such officials is not sufficient to create a nexus to D.C.; rather, such cases should be retained in D.C. only where the D.C. officials have "extensive involvement" – *i.e.*, a "significant, day-to-day, role" – in the subject matter of the suit.[7]  In *Wilderness Soc'y*, Bruce Babbitt, the head of the defendant agency and named defendant, had "heavy" and "personal involvement" in the agency action that was challenged.  104 F. Supp. 2d at 14.  He made a "six-day visit" to Alaska to meet with local officials about the NPR and subsequently made a number of public statements about the case from D.C., actions the Court found were "far from routine."  *Id.*  Nothing of the sort is present in this case.  *See Airport Working Group*, 226 F. Supp. 2d at 230 n.1 (distinguishing *Wilderness Soc'y* on the same grounds).

---

[6] In *Greater Yellowstone Coal.*, although the case concerned land in Montana, the "national" issue the Court found significant involved a significant and hotly disputed question of statutory interpretation.  At least at this stage, these cases present no similarly significant question.  In addition, *Greater Yellowstone Coal.* was "an APA review case" that would "not require a trial" or any discovery.  180 F. Supp. 2d at 128 n.3.  A court's decision whether to transfer such cases, which typically require the Court to make a legal ruling on a summary judgment motion, simply does not provide guidance in deciding to transfer a more typical civil case, like this one, that will involve extensive discovery, numerous witnesses, and a trial.

[7] *Shawnee Tribe*, 298 F. Supp. 2d at 25-26; *S. Utah Wilderness Alliance* v. *Norton*, 315 F. Supp. 2d 82, 87 (D.D.C. 2004); *DeLoach*, 132 F. Supp. 2d at 25.

7

Thus, this Court's cases, including the two cited by the plaintiffs, hold that a transfer motion in a case relating to agency proceedings should be denied where i) the case presents a challenge by a D.C.-based plaintiff seeking review of a D.C-based agency's decision, ii) the agency's D.C. officials had a significant, day-to-day involvement in the decision that is the subject matter of the suit, and iii) the subject matter of the suit involves a "national resource." By contrast, the Court routinely transfers cases in which D.C. has no "stronger interest in the outcome of th[e] lawsuit than it would have in any other complex litigation which in some manner implicates a federal regulatory scheme." *DeLoach*, 132 F. Supp. 2d at 25; *see also supra* note 4. It is clear that the plaintiffs' complaints – as well as the purportedly "meaningful" ties discussed by the plaintiffs – fall into the latter category, and should be transferred.

The plaintiffs point to several other purportedly "meaningful" ties, but these, too, do not establish the kind of "significant, day-to-day role" by FCC officials and instead simply reflect that this litigation "in some manner implicates a federal regulatory scheme." *DeLoach*, 132 F. Supp. 2d at 25. Thus, the plaintiffs also assert that AT&T's designation of its FCC filings in AT&T's initial disclosures is "an admission by AT&T" that these filings "are central to its defenses in this case." Opp. at 6-7. Even if that were true, this fact has no practical effect on the conduct of the lawsuit, for the same reasons discussed above: these pleadings were filed in D.C. only because FCC rules require it, and if the plaintiffs were correct, any case involving FCC filings could be transferred to this Court. As a factual matter, moreover, the plaintiffs are wrong that these FCC documents are a central part of the discovery in this case. As AT&T informed the Court, it is reviewing millions of pages of documents relevant to the cases, and the FCC filings on which plaintiffs rely make up only a small fraction of this total. This reflects the critical fact that the two AT&T services at issue in these cases (phone-to-phone IP telephony and

8

prepaid calling card) were created, designed, implemented, and offered by AT&T's employees that are principally located in New Jersey, not in Washington, D.C. *See* AT&T Mot. at 8 (nine of eleven AT&T witnesses identified in its initial disclosures work in New Jersey; none work in D.C.).

The plaintiffs also point to defenses asserted by AT&T, again in its FCC filings, that are purportedly "unique" to D.C. Opp. at 10-12.[8] In fact, nothing about those defenses is "unique" to this district. For example, AT&T's defense that retroactive recovery of access charges would be inequitable stems in part from the parties' course of dealings, which entails examination of facts that are of course not "unique" to D.C. And, to the extent the parties rely on federal statutes and principles of federal administrative law, any federal court is equally competent to adjudicate such claims, which are not at all "unique" to D.C.[9]

### B) D.C. Has No Interest In Litigation Between Out-Of-State Companies Regarding Wholesale Services Offered In Foreign States.

The plaintiffs' only other claim that these cases have a "meaningful" connection to D.C. relies on the fact the plaintiffs terminate to their customers telephone calls that were "made in the

---

[8] The plaintiffs also make the absurd claim that there is a "meaningful" tie to D.C. because "these cases were invited by the FCC's orders." Opp. at 9-10. The short answer to this claim is that nothing in the FCC orders "invited" cases to be filed *only* in this district.

[9] *See* Mot. at 9. The plaintiffs are also incorrect in their claims (Opp. at 2, 9-13, 20) that this Court has a special expertise in cases relating to FCC orders and that D.C. has a substantial interest in this case because it might involve interpretations of the Communications Act (47 U.S.C. § 151, et seq.) or orders issued by the FCC. There are hundreds of cases filed in other districts that relate to the Act and to the FCC orders implementing the Act, and no one contends that all of these cases should be transferred to this district. For example, the "Telecommunications Act has been the source of ongoing litigation *nationwide*," *Indiana Bell Tel. Co.* v. *McCarty*, 30 F. Supp. 2d 1100, 1104 (S.D. Ind. 1998), yet such cases have been filed in courts throughout the country. Indeed, one provision of the Act explicitly provides for certain suits to be brought in any "Federal district court." 47 U.S.C. § 252(e)(6).

9

District of Columbia." Opp. at 2, 7-8 & Exhs. 1-5, 7. This entirely unsurprising and irrelevant fact creates no meaningful tie between these cases and the District of Columbia.

The services for which the plaintiffs seek recovery are called "access services." These are wholesale services offered by local telephone companies (like the plaintiffs) that long distance carriers like AT&T can choose to purchase and combine with their own networks and services so as to offer retail consumers end-to-end long distance services. Such long distance calls, of course, can be placed to and from virtually anywhere in the country. The very nature of long distance services, therefore, means that the plaintiffs have terminated calls that "were made in" *every state*.[10]

Plaintiff Lexcom, for example, provides local services to customers in Lexington, North Carolina. The fact that Lexcom terminated calls in North Carolina that were placed by long distance callers in the District of Columbia plainly does not create any significant connection between this district and the access services for which the plaintiffs seek to recover.[11] If the plaintiffs' analysis were correct, this action could be filed in or transferred to *any* district, because Lexcom and the other plaintiffs undoubtedly terminated calls that "were made in" all 50 states. Indeed, if the locations where calls were originated were relevant at all, it would counsel

---

[10] There are both "originating" access services (which connect the *calling* party to the long distance carrier) and "terminating" access services (which connect the *called* party to the long distance carrier). Most of the dispute surrounds terminating access charges, which, as discussed in the text, are provided in a specific area but can be used for long distance calls that are placed from anywhere in the country. To the extent originating access services are at issue, those services also would arise only in the plaintiffs' out-of-state service territories.

[11] This case is, in essence, a dispute between wholesalers (the plaintiffs) and a retailer (AT&T), over the terms and conditions of the wholesale services. Retail customers in D.C. that made calls and thereby purchased AT&T's retail long distance services have no interest in this dispute. Those D.C. customers bought these services pursuant to entirely distinct contracts with AT&T, both parties performed the contracts, and the outcome of this lawsuit will have no effect on those D.C. customers that placed calls to plaintiffs' customers.

10

in favor of AT&T's transfer motion: because New Jersey's population is more than 15 times greater than D.C., it is certain that Lexcom and the other plaintiffs terminated many times more calls that were placed by long distance callers in New Jersey than in D.C.

The essential and undisputed fact here is that the services for which the plaintiffs seek recovery – *i.e.*, wholesale access services – were provided by the plaintiffs almost entirely outside D.C.  In a critical concession, the plaintiffs admit that most of the "*plaintiffs do not offer service in this district*."  Opp. at 7 (emphasis added).  Further, as AT&T previously demonstrated, the other plaintiffs provide AT&T with only a very insignificant amount of access services in D.C.  *See* AT&T Mot. at 5-6 & Lancaster Dec. ¶¶ 3-7 & Exh. 1 (*e.g.*, plaintiff Granite bills AT&T for about $225 per month of access services in D.C.).  The plaintiffs do not dispute – and indeed, corroborate – AT&T's showing that the level of billing for the plaintiffs' access services provided in D.C. is negligible.  These facts alone demonstrate that there is simply no substantial connection between these cases and the District of Columbia.

## II.  EXCEPT FOR PLAINTIFFS' COUNSEL, TRANSFER OF THESE CASES TO NEW JERSEY PLAINLY WOULD BE CONVENIENT.

The plaintiffs have effectively conceded that they filed these cases in the District of Columbia, not because any of the parties are located here or because the claims arose in D.C., but because it is most convenient for their counsel.  Transcript of Sept. 14 Hearing at 22 (Exh. 1).  However, as the plaintiffs' counsel candidly admitted at the scheduling conference, "the cases say the convenience of counsel does not mean anything."  *Id.*  In that conference, this Court agreed and stated that "the law says that[]" convenience of counsel is "not the decisive thing."[12]

---

[12] *Id.*; *see also* AT&T Mot. at 6-7 (citing cases); *Armco Steel Co.* v. *CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991) ("The location of counsel carries little, if any, weight in an analysis under § 1404(a)."); *see also Liban* v. *Churchey Group II, LLC*, 305 F. Supp. 2d 136, 142 (D.D.C. 2004) (same); *Holland* v. *A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) (same); *Reiffin*, 104 F. Supp. 2d at 52 n.7 (D.D.C. 2000) (same).

Despite its own admission, the statements of this Court, and the overwhelming weight of authority, the plaintiffs have uncovered a few decisions from another jurisdiction – the Northern District of Illinois – that they now say permits the Court to give "important" weight to the convenience of counsel. Opp. at 16. Legally, these claims are simply wrong. Even the cases cited by the plaintiffs say only that, when convenience of counsel has a significant impact on the cost of litigation, this factor may, in some cases, be given a "slight weight." *Kucala Enterprises, Ltd.* v. *Auto Wax Co.*, 2002 WL 1586415 *3 (N.D. Ill. 2002). But the overwhelming weight of authority from this Court (and also in the Northern District of Illinois) holds that the convenience of counsel is "never" afforded significant weight.[13]

Further, and even if some slight weight were to be given to the location of plaintiffs' counsel, the plaintiffs surely exaggerate the marginal costs that would be incurred due to a transfer to New Jersey. The most significant costs of this litigation will consist of the time spent by counsel in pre-trial preparation and discovery, and virtually all of those expenses will be incurred regardless of venue. In this regard, because so many AT&T witnesses work and/or reside in New Jersey, the plaintiffs' counsel will undoubtedly be making numerous trips to New Jersey in all events. The marginal costs of additional trips is limited, and although the plaintiffs will likely need to hire local counsel, all of these costs can be spread among all of the plaintiffs (whose numbers continue to grow). Accordingly, the burden of these limited marginal costs on

---

[13] *See supra* note 12. An opinion authored by the Chief Judge of the Northern District of Illinois, for example, addressed an argument similar to the one advanced by the plaintiffs here, noting that "the centralization of litigation in this forum seems designed to enhance the convenience of plaintiff's counsel." *Hemstreet* v. *Scan-Optics*, 1990 WL 36703 *4 (N.D. Ill. 1990). The court transferred the cases to another district, even though the "plaintiff would be forced to hire local . . . counsel," because the "*convenience and location of counsel has never been accorded weight* in a transfer analysis." *Id.*

any individual plaintiff would not be significant, particularly given that these costs are not afforded any significant weight in a venue transfer analysis.

## III.   THE REMAINING FACTORS ALSO DEMONSTRATE THAT TRANSFER OF THESE CASES TO NEW JERSEY IS APPROPRIATE.

*Convenience of the Parties*.  Contrary to the plaintiffs' claims (Opp. at 14-15), this factor also weighs in favor of a transfer.  At the end of the day, if Washington, D.C., is a convenient forum for the *plaintiffs* (as opposed to their counsel), then it is impossible to conclude that New Jersey would be inconvenient for the plaintiffs.  The plaintiffs are, for the most part, located as far away from D.C. as from New Jersey, yet they were willing to file suit and hold trial in D.C., a distant locale for most.[14]  Given that there are so many plaintiffs and that they are scattered across the country, there is no single district that can be most convenient for all of them.  Rather than file individual actions in their home forum (where their choice would have received more deference), these plaintiffs chose to combine their cases with other plaintiffs in a single forum, thereby saving costs.  All the parties to this case thus agree that proceeding in a single forum is most convenient for them, and although New Jersey may not be the most convenient forum for any individual plaintiff, New Jersey is the most convenient single forum, and is certainly more convenient than D.C.

*Witness Availability For Trial*.  As AT&T demonstrated, most of its witnesses are located in New Jersey, and transfer to New Jersey would plainly be convenient for them.  As to

---

[14] The plaintiffs make much of the fact that RCN's executive offices, which AT&T noted were located in New Jersey, moved their corporate headquarters from New Jersey to Herndon, Virginia in May, 2005, and that, in 2006, certain RCN employees will be moved from New Jersey to Pennsylvania.  Of course, AT&T's claims were drawn directly from RCN's Complaint, which stated – apparently falsely – that, apart from one subsidiary in Chicago, "the principal place of business of all other" RCN plaintiffs is "Princeton, NJ."  Compl. ¶ 8 (No. 05-1432).  But this movement of the RCN plaintiffs merely puts them in a similar position as the other plaintiffs; it does not make New Jersey inconvenient.

the plaintiffs' witnesses, most of them live remotely from both D.C. and New Jersey, and, for the reasons just described above, the latter is not materially less convenient than the former. The plaintiffs assert that, in some cases, the Court's venue transfer analysis examines only the availability of third party witnesses. Opp. at 18-19. To the extent that is true, then this factor is, at this juncture, largely irrelevant, because neither side has yet identified third-party witnesses.

**CONCLUSION**

For the foregoing reasons and for the reasons stated in AT&T's motion, the Court should transfer these cases to the United States District Court for the District of New Jersey.

Dated:  October 24, 2005

Respectfully submitted,

/s/ Michael J. Hunseder
_____
David M. Schiffman (admitted *pro hac vice*)
Sidley Austin Brown & Wood, LLP
Bank One Plaza
10 South Dearborn
Chicago, Illinois 60603
Phone:  (312) 853-7000
Fax:     (312) 853-7036

Paul M. Zidlicky (DC Bar No. 450196)
Michael J. Hunseder (DC Bar No. 447260)
Brendan J. McMurrer (DC Bar No. 493424)
Sidley Austin Brown & Wood, LLP
1501 K Street, N.W.
Washington, D.C.  20005
Phone:  (202) 736-8000
Fax:     (202) 736-8711

*Attorneys for Defendants AT&T Corp. and AT&T Communications, Inc.*