UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
IN RE:                             )
                                   )
AT&T ACCESS CHARGE LITIGATION      )   Civil Action No. 05-1360 (ESH)
                                   )
_____)

MEMORANDUM OPINION

This case is a coordinated action relating to defendant AT&T Corp.'s alleged failure to pay required charges for its use of plaintiffs' local telephone network facilities to receive and complete long-distance telephone calls. Before the Court is AT&T Corp.'s and AT&T Communications, Inc.'s (collectively "AT&T" or "defendants") Motion to Transfer Venue to the United States District Court for the District of New Jersey, which is opposed by plaintiffs. For the reasons discussed below, the Court will grant defendants' motion.

BACKGROUND

This coordinated action currently includes eleven complaints brought by seventeen plaintiffs -- a number that is likely to grow.[1/] Each plaintiff claims that AT&T underpaid federal

---

[1/] The current plaintiffs include: ITC^DeltaCom, Inc. ("ITCD"), an Alabama corporation with its principal place of business in Huntsville, Alabama; Business Telecom, Inc. and Business Telecom of Virginia, Inc. (collectively "BTI"), a North Carolina and a Virginia corporation, respectively, with their principal place of business in Huntsville, Alabama; Granite Telecommunications, LLC ("Granite"), a Delaware corporation with its principal place of business in Quincy, Massachusetts; RCN Telecom Services of Illinois, an Illinois company with its principal place of business in Chicago, Illinois; RCN Telecom Services, Inc., a Pennsylvania corporation with its principal place of business in Princeton, New Jersey; RCN Telecom Services of Philadelphia, Inc., a Pennsylvania corporation with its principal place of business in Princeton, New Jersey; RCN Telecom Services of Massachusetts, Inc., a Massachusetts corporation with its principal place of business in Princeton, New Jersey; RCN Telecom Services of Washington, D.C., Inc., a District of Columbia corporation with its principal place of business in Princeton, New Jersey; RCN BecoCom LLC, a Massachusetts corporation with its principal place of

and state mandated switched access charges to local exchange carriers for the use of local exchange facilities to originate and terminate long-distance calls.  Plaintiffs allege that defendants began disguising long-distance calls as interexchange calls sometime in 2000 in order to avoid detection and thereby avoid the applicable switched access charges.  Plaintiffs contend defendants orchestrated and implemented two fraudulent schemes, one using phone-to-phone Internet Protocol telephony technology and the other using AT&T's prepaid calling cards, through concerted action by employees at AT&T corporate headquarters in New Jersey.

Two years after implementing these allegedly fraudulent schemes, AT&T filed two petitions with the Federal Communications Commission ("FCC") requesting that specific types of long-distance calls, calls matching the types alleged by the plaintiffs, be exempt from access charges.  The FCC ultimately rejected both of AT&T's petitions on April 21, 2004 and February 23, 2005.  *See Petition for a Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges*, WC Docket No. 02-361, Order, 199 F.C.C.R. 457 (2004); *AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, WC Docket Nos. 03-313 and 05-68, Order and Notice of Proposed Rulemaking, 20 F.C.C.R. 4826 (2005).  Furthermore, the FCC instructed local exchange carriers to pursue

---

business in Princeton, New Jersey; Starpower Communications LLC, a Delaware corporation with its principal place of business in Princeton, New Jersey; McClure Telephone Co. ("McClure"), an Ohio company with its principal place of business in McClure, Ohio; Lexcom Telephone Co. ("Lexcom"), a North Carolina company with its principal place of business in Lexington, North Carolina; Supra Telecommunications and Information Systems, Inc. ("Supra), a Florida company with its principal place of business in Miramar, Florida; Illinois Consolidated Telephone Co. ("ICTC"), an Illinois corporation with its principal place of business in Mattoon, Illinois; Consolidated Communications of Fort Bend Co. ("CCFB") and Consolidated Communications of Texas ("CCTX"), both Texas corporations with their principal place of business in West Conroe, Texas; and Prairie Grove Telephone Co. ("Prairie Grove"), an Arkansas company with its principal place of business in Prairie Grove, Arkansas.

collection actions against AT&T for any unpaid access charges with an appropriate court.

ITCD and BTI initiated this action on July 7, 2005. Several additional plaintiffs subsequently filed identical complaints, causing the Court on September 23, 2005, to issue a Case Management Order coordinating the actions for pre-trial purposes. In response to the Case Management Order, AT&T withdrew the Motion to Transfer Venue it had previously filed on September 12, 2005, in the individual actions and re-filed it ("Defs.' Mot.") on September 30, 2005 as part of the coordinated action. Plaintiffs filed a joint Opposition to the Motion to Transfer Venue ("Pls.' Opp'n") on October 14, 2005, to which defendants filed a Reply ("Defs.' Reply") on October 24, 2005.

## ANALYSIS

Defendants seek to transfer this case pursuant to 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of showing that transfer is proper. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Section 1404(a) grants the district court discretion to "adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness.'" *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts retain broad discretion in balancing the asserted convenience and fairness to the parties. *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997).

To succeed in a motion to transfer, defendants must make two showings. First, they must establish that this action might have been brought in the proposed transferee district, *i.e.*, the

District of New Jersey. *DeLoach v. Philip Morris Co.,* 132 F. Supp. 2d 22, 24 (D.D.C. 2000). Second, they must "demonstrate that the balance of convenience of the parties and witnesses and the interest of justice are in their favor." *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983). In analyzing the relative convenience of the competing venues, a court must weigh a number of private and public interest factors. *Reiffin*, 104 F. Supp. 2d at 51-52. Private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendants' preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. *Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002) (citing *Trout Unlimited*, 944 F. Supp. at 16). Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *Id*. Courts may also consider the availability of compulsory process to compel the attendance of unwilling witnesses and other practical aspects of expeditiously and conveniently conducting a trial. *See Reiffin*, 104 F. Supp.2d at 52; *SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978); *accord* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3848-3854 (2d ed. 1986).

Given the substantial ties of defendants to the District of New Jersey, there can be no dispute that all of the cases that have been coordinated here could have been brought in the District of New Jersey. AT&T maintains corporate headquarters in Bedminster, New Jersey, is subject to personal jurisdiction in that district, and venue is proper there under 28 U.S.C.

§ 1391(b) and (c) as its relevant entities reside in New Jersey. Plaintiffs do not dispute that venue would be appropriate in the District of New Jersey. Thus, the only question before the Court is whether the public and private factors outlined above weigh heavily enough in favor of New Jersey to warrant transfer to that district.

The first private factor, plaintiffs' choice of forum, is a "paramount consideration" in any determination of a transfer request. *Sheraton Operating Corp.*, 984 F. Supp. at 25. Typically, courts accord plaintiffs' choice of forum "substantial deference" when analyzing a transfer motion. *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant."); *see also Reiffin*, 104 F. Supp. 2d at 52. While a court may not transfer simply because it thinks another forum may be superior to plaintiffs' chosen forum, *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d at 66, 71 (D.D.C. 1998), such deference is substantially diminished where the chosen forum is neither their home forum nor has any meaningful ties to the controversy. *Trout Unlimited*, 944 F. Supp. at 17. Defendants argue that none of the plaintiffs is located within the District of Columbia and therefore plaintiffs' choice of forum "deserves no deference." (Defs.' Mot. at 7.) Plaintiffs maintain their principal places of business in Alabama, Arkansas, Florida, Illinois, Massachusetts, New Jersey, North Carolina, Ohio, Texas and Virginia. The sole plaintiff that is incorporated under the laws of the District of Columbia, RCN Telecom Services of Washington, D.C. ("RCN DC"), maintains its principal

place of business in New Jersey.[2/]  Indeed, a plurality of the plaintiffs maintain New Jersey as their principal place of business.[3/]

Plaintiffs' claim to substantial deference is further vitiated by the lack of any meaningful ties between the chosen forum and the substance of the dispute.  *See Trout Unlimited*, 944 F. Supp. at 17.  First, of the 17 plaintiffs, eight -- ITCD, McClure, Lexcom, Supra, Prairie Grove, ICTC, CCFB and CCTX -- provide absolutely *no* services within the District of Columbia.  Of the six RCN plaintiffs, only one provides any services in D.C.  The remaining plaintiffs maintain what can best be described as only minimal business operations within the District.  BTI, which provides local phone service on 53 lines (Pls.' Opp'n at 8 n.9), did not bill AT&T for any services provided in the District of Columbia during the year preceding the filing of its complaint.  (Defs.' Mot. at 6.)  Between August 2004 and July 2005, Granite billed AT&T only $2670.00 for switched access services, which amounted to only 0.14 percent of Granite's nationwide bill to AT&T during that time.  (Defs.' Mot., Decl. of Geri Lancaster Ex. 1.)  The one

---

[2/] The Court notes that RCN DC, as a D.C. corporation, arguably has a stronger claim to venue in the District of Columbia than any of the other plaintiffs.  Nevertheless, the Court's Case Management Order instructed that if it was necessary for the Court to consider one party separate from the others with regard to any motion, a pleading should filed with a specialized caption alerting the Court to that party's unique status. (9/23/05 Order ¶ II.B.)  None of the plaintiffs requested individualized treatment with respect to the Motion to Transfer.  Thus, despite slight variations among plaintiffs with respect to the strength of their claim to venue, the Court will treat the plaintiffs as a collective whole for purposes of determining whether to order a transfer.

[3/] Plaintiffs RCN Telecom Services, Inc., RCN Telecom Services of Philadelphia, Inc., RCN Telecom Services of Massachusetts, Inc., RCN Telecom Services of Washington, D.C., Inc., RCN BecoCom LLC, and Starpower Communications LLC, all have as their principal place of business Princeton, New Jersey.  Plaintiffs assert in their Opposition that RCN's New Jersey offices will be closing next year and will be relocated to Pennsylvania, Illinois, and Northern Virginia.  Even accepting plaintiffs' assertions as true, the relocation of offices to these three jurisdictions does not strengthen their ties to D.C. or the argument for deference to their decision to file their complaints in the District of Columbia.

RCN entity to service D.C. accounted for only 5.64 percent of RCN's total nationwide bills to AT&T. (Defs.' Mot., Decl. of Geri Lancaster Ex. 2.)

Lacking substantial financial or business ties to the District of Columbia, plaintiffs attempt to fashion an argument based on regulatory ties: AT&T filed petitions regarding switched-access tariffs with the Federal Communications Commission ("FCC") in the District of Columbia and the FCC issued its rulings, which form the basis for plaintiffs' claims, from its headquarters in the District of Columbia. (Pls.' Opp'n at 5-7, 9-14.) This Court has ruled on several occasions, however, that "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the question of venue. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002). Particularly appropos is the case of *DeLoach v. Philip Morris Co.,* 132 F. Supp. 2d 22 (D.D.C. 2000), where tobacco producers brought suit in the District of Columbia against Philip Morris under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, for allegedly anti-competitive actions. The Court granted defendant's motion to transfer venue, finding that "the only real connection this lawsuit has to the District of Columbia is that a federal agency headquartered here . . . is charged with generally regulating and overseeing" the process Philip Morris was accused of manipulating. *Id*. at 25. Similarly, even if defendants made fraudulent misrepresentations in their FCC filings, as plaintiffs allege, this is not sufficient to create venue since the FCC has not had any "significant day-to-day role in observing, managing, or running" switched access usage or billing within the telecommunications industry, *id.*, as compared to the extensive level of agency involvement in *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13-14 (D.D.C. 2000). Moreover, to accept plaintiffs' argument would amount to an open invitation to litigants to sue private parties in this

jurisdiction whenever the case has some relationship to an agency action. Such an expansive view of venue finds no support in the law and therefore will not be adopted here. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) ("Courts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia" by alleging the involvement of government officials.); *see also Airport Working Group of Orange County*, 226 F. Supp. 2d at 230-31 ("Given the lack of any meaningful ties to this jurisdiction, this Court is particularly mindful of the admonition that courts 'must be especially cautious in allowing [cases] to remain in the District of Columbia.'") (alteration in original) (citing *Trout Unlimited*, 983 F. Supp. at 17).

      Nor does this case rise to the level of "national significance" present in *Wilderness Soc'y*. There, the Court found that the Secretary of the Interior's extensive involvement in the conduct of various environmental studies relating to the development of oil and gas resources in Alaska supported venue in the District of Columbia because of "the national scope of the environmental issues." 104 F. Supp. 2d at 14. By contrast, while AT&T's alleged actions may have taken place all over the country, this case does not involve a "national policy decision" or a significant "public interest." *Id*. at 13-14.

      Therefore, because the District of Columbia has "no meaningful ties to the controversy and no particular interest in the parties or subject matter," *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995) (internal quotation marks omitted), the Court finds that deference to the plaintiffs' choice of forum is not appropriate.

      Turning to the other factors relevant to a transfer determination, the Court concludes that New Jersey constitutes a far more appropriate forum. After considering the plaintiffs' and

defendants' choice of fora, courts typically look to whether the claim arose in the district in which suit was filed. *Trout Unlimited*, 944 F. Supp. at 16. In this case, plaintiffs accuse AT&T of "orchestrat[ing] and implement[ing] at least two fraudulent schemes in an attempt to avoid plaintiffs' 'access charges'." (Compl. ¶ 2.) While the manifestations of defendants' alleged actions were felt by local carriers nationwide, the conduct forming the basis of plaintiffs' suit took place primarily in New Jersey. As plaintiffs' allege: "AT&T coordinates and controls one overarching position concerning all of these issues from its corporate headquarters." (Compl. ¶ 14.) It is therefore clear that the conduct that underlies plaintiffs' claims and caused their alleged harms occurred in New Jersey.

Next, courts consider "the convenience of the parties." *Trout Unlimited*, 944 F. Supp. at 16. As none of the individual plaintiffs has the District of Columbia as its principal place of business, and the majority are not located in New Jersey, the two fora appear to be of equal inconvenience for plaintiffs. But as plaintiffs' counsel candidly admitted at the initial scheduling conference, plaintiffs' choice of forum is driven by their counsel's location in the District of Columbia.[4] Typically, the "location of counsel carries little, if any, weight in an analysis under § 1404(a)," *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991), since this factor can easily be manipulated thereby permitting forum shopping. Nevertheless, where "convenience of counsel bears directly on the cost of litigation, it becomes a factor to consider."

---

[4] At the initial scheduling conference, plaintiffs' counsel stated: "Your Honor, I want to be very up front about this. [Our clients] would like to keep the cost down. *We're here.* It's a case that involves a lot of expertise. There are not New Jersey lawyers that are experienced with respect to these FCC orders. . . . *I know the cases say the convenience of counsel does not mean anything.* But . . . it is a lot more economical for our clients to litigate this case in D.C. than in New Jersey." (9/13/05 Tr. of Initial Sch. Conf. at 22 (emphases added).)

*Blumenthal v. Mgmt. Assistance*, 480 F. Supp. 470, 474 (N.D. Ill. 1979); *see also Green v. Footlocker Retail, Inc.*, Civ. Action No. 04-1875, 2005 WL 1330686 (D.D.C. 2005). Although plaintiffs' argument rests on this cost factor, they do no more than merely assert that a transfer to the District of New Jersey will drive up litigation costs by requiring local counsel to be hired and increasing travel expenses. (Pls.' Opp'n at 16-17.) There is no showing that plaintiffs collectively are not in a position to absorb the difference in cost.[5] Furthermore, a substantial amount of pre-trial discovery must be conducted in New Jersey as defendants' documents and witnesses are located there. Thus, travel expenses will be significant whether the case remains here or is transferred. Additionally, since the majority of witnesses and relevant documents are found in New Jersey, the ease of access to the sources of proof will be improved if the case is transferred.

Considering the public interest factors, the Court finds that New Jersey has a much stronger interest in resolving this dispute as compared to the District of Columbia. Though the case involves alleged damages in a multitude of states, the actions in question were undertaken by a New Jersey corporation and implemented by New Jersey-based employees. The State of New Jersey has a significant interest in allegations of fraudulent activity by its corporations and

---

[5] Given that the combined revenues of plaintiffs, excluding ICTC, CCFB and CCTX (who filed suit after plaintiffs filed their Opposition), were $1,305,000,000 in 2004 (Pls.' Opp'n at 15), there is no reason to assume that plaintiffs would be unable to absorb the extra cost (if any) of litigating in New Jersey. In addition, the need to hire local counsel is not clear, since it appears from Swidler Berlin's website that it has both a New York office and at least two attorneys who are members of both the New Jersey bar and the bar for the U.S. District Court for the District of New Jersey.

certainly has a greater interest than the District of Columbia, where very few of the alleged harms were manifested and most of the parties have virtually no ties.

Plaintiffs had a decision to make when filing their lawsuits: either file in each plaintiff's home district and protect their venue choice or file a multitude of lawsuits in one jurisdiction and conserve costs. Having reaped the benefit of cost-sharing, plaintiffs have less standing to complain that their choice of venue is not being honored. The coordination of these cases in a single venue is no doubt more cost-efficient than trying each of them separately. That New Jersey may not be as cost-efficient a location for plaintiffs because they have chosen to hire D.C. counsel is simply not enough to tip the balance when the remaining factors weigh heavily in favor of transfer.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Transfer Venue shall be **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.


                                                                                     s/
                                          ELLEN SEGAL HUVELLE
                                          United States District Judge

Date: November 16, 2005